## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

REX TABORA, BERNIE HMUROVICH,
SARAH JOHNSON, LENNY MARTINEZ,
AND EVA PEREZ, individually and on behalf
of all others similarly situated,

                Plaintiffs,

     v.

LG ELECTRONICS U.S.A., INC.,

                Defendant.

Civil Action No. _____

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

Plaintiffs Rex Tabora, Bernie Hmurovich, Sarah Johnson, Lenny Martinez, and Eva Perez ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against LG Electronics U.S.A., Inc. ("LG" or "Defendant"). Plaintiffs allege the following based on personal knowledge as to their own acts and based upon the investigation conducted by their counsel as to all other allegations:

### NATURE OF THE ACTION

1.     This class action lawsuit is brought because LG concealed a known defect from its customers in the United States who purchased refrigerators manufactured by LG equipped with linear compressors on or after January 30, 2014 (the "LG Refrigerators").

2.     This action arises from LG's failure, despite its longstanding knowledge, to disclose to Plaintiffs and similarly situated customers that the LG Refrigerators have defective compressors that fail to function in a reliable manner as expected (the "Compressor Defect").

3.     Over four years ago, LG settled a class action in which the plaintiffs alleged that LG's refrigerators were defective. *See* Order Granting Final Approval of Settlement and Request

for Entry of Judgment, *Clark v. LG Elecs. USA, Inc.*, No. 3:13-CV-485-JM (JMA), ECF No. 71, ¶ 2 (S.D. Cal. May 15, 2015). The claims released by the judgment in that case, however, are limited to those involving refrigerators purchased before January 29, 2014, which marks the beginning of the class period in this case.

4.      As explained below, when customers report that the LG Refrigerators have ceased cooling their food, LG eventually advises the customers that the compressors in their LG Refrigerators must be replaced. However, when the defective compressors are replaced, customers often experience additional issues, including: (a) being charged for replacement parts despite such parts being covered under warranty; (b) being charged for labor on the basis that such labor is not covered by warranty; (c) waiting an undue amount of time to receive a replacement part due to a lack of available parts and/or a lack of available repair technicians; (d) receiving replacement compressors that cause LG Refrigerators to be significantly noisier than they were when they still had the factory installed compressors; (e) receiving replacement compressors that have been remanufactured instead of new compressors; (f) being subjected to repeat failures of LG Refrigerators due to the presence of the Compressor Defect in replacement compressors; and/or (g) an inability to repair the LG Refrigerators' ability to cool food and beverages so that consumers' food becomes spoiled and unusable, and, moreover, are forced to buy new refrigerators before they otherwise should have had to do so.

5.      LG expressly warranted that the compressor in the LG Refrigerators would be covered for ten years from the date of purchase. However, when customers report to LG that their refrigerators are failing, they are often told that the manifestations of the Compressor Defect are minor, are provided with ineffective repairs, and/or directed to have their compressors replaced with the same defective parts.

2

6.     LG knew of this critical defect at the time of sale of the LG Refrigerators, but sold them anyway, without disclosing the Compressor Defect to Plaintiffs and Class members. Moreover, LG has routinely failed to repair the LG Refrigerators without charge when customers report failures arising from the Compressor Defect.

7.     LG, an experienced and sophisticated refrigerator manufacturer, learned of the Compressor Defect through, *inter alia*, customer complaints; repair records from its own records and those of its authorized repair technicians; warranty and post-warranty claims; pre- and post-release internal testing and analyses; and other various sources, yet has failed to notify consumers prior to purchase of the nature and extent of the Compressor Defect affecting the LG Refrigerators, or provide an adequate post-purchase remedy.

8.     LG's efforts have been inadequate in resolving the Compressor Defect or providing relief to Plaintiffs and the Class. LG has failed to alert the Class members of the true nature of the Compressor Defect.

9.     Despite its knowledge conveyed to LG by information from its affiliated retailers, authorized repair technicians, consumer complaints, its own internal records and testing, and the *Clark* and other litigation, LG has not recalled the LG Refrigerators to repair the defective compressors once and for all, has not offered its customers suitable repairs free of charge, and has not offered to reimburse consumers who have suffered economic losses and who were forced to pay for the repairs out-of-pocket.

10.     In fact, rather than redesigning the defective components and installing non-defective components, LG purports to "repair" the LG Refrigerators by performing ineffectual or insufficient temporary fixes, part replacements, and other procedures that fail to fully resolve the defect. Further, owners of the LG Refrigerators incur or will incur out-of-pocket costs for these

repairs because LG refuses to issue a recall to prevent them. LG thus unfairly shifts the costs resulting from the defect to the Class members, and benefits or will benefit from the revenue generated by repeat repairs. Accordingly, consumers will be required to pay hundreds, if not thousands, of dollars to repair or replace the defective compressors, related components, or other parts that become damaged because of the Compressor Defect, and LG is unjustly enriched at the expense of its customers.

11.     As a result of these failures by LG, Plaintiffs and Class members have been damaged, and bring this lawsuit to recover those damages.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act. At least one member of the proposed Class is a citizen of a different state than LG, the number of proposed Class members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. 28 U.S.C. § 1332(d)(2)(A).

13.     Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that plaintiffs would ordinarily expect to try them in one judicial proceeding.

14.     This Court has personal jurisdiction over LG because its principal place of business is located in this District and because LG maintains sufficient minimum contacts in New Jersey and otherwise intentionally avails itself of the markets within New Jersey through its promotion, sale, marketing and distribution of the LG Refrigerators and other goods, which renders the exercise of jurisdiction by this Court proper and necessary.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)-(c). A substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

16.     Plaintiff Rex Tabora is a California citizen who resides in Daly City, California. Plaintiff Tabora purchased an LG Refrigerator containing a linear compressor on or around October 19, 2015.

17.     Plaintiffs Bernie Hmurovich and Sarah Johnson are Minnesota citizens who reside in Elk River, Minnesota. Mr. Hmurovich purchased an LG Refrigerator containing a linear compressor for the household he shares with the family of his daughter, Ms. Johnson, on or around July 13, 2016.

18.     Plaintiff Lenny Martinez is a New Mexico citizen who resides in Albuquerque, New Mexico. Plaintiff Martinez purchased an LG Refrigerator containing a linear compressor on or around November 28, 2015.

19.     Plaintiff Eva Perez is a New York citizen who resides in Patterson, New York. Plaintiff Perez purchased an LG Refrigerator containing a linear compressor in or around September 2014.

20.     Defendant LG Electronics U.S.A., Inc. is a corporation organized and existing under the laws of the State of Delaware with its American headquarters and principal place of business located at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

21.     LG manufactures, markets, advertises, and sells home appliances, including the LG Refrigerators, throughout the United States, including in California, Minnesota, New Mexico, and New York. LG is the warrantor and distributor of the LG Refrigerators in the United States.

22.     At all relevant times, LG was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling the LG Refrigerators and related component parts throughout the United States.

5

## FACTUAL ALLEGATIONS

23.     LG designs, manufactures, markets, distributes, warrants, and sells home appliances, including the LG Refrigerators, throughout the United States.

24.     LG sells the LG Refrigerators through retail stores such as Best Buy, Home Depot, Sears, and through smaller appliance stores, both in store and online. LG's suggested retail price for the LG Refrigerators ranges from approximately $1,400 to $7,000, with most models falling in the $1,400 to $3,000 range.

25.     The primary purpose of any refrigerator is to cool and freeze food and beverages. A refrigerator's compressor plays an integral role in the cooling process. It acts as a motor and a pump to move refrigerant—the cooling substance that changes from liquid to gas—through the refrigerator's system.

26.     The refrigerator's temperature sensors trigger the compressor to start and stop the cooling process. When temperature rises above a set level, the compressor starts by drawing cold refrigerant gas from the refrigerator's evaporator. The refrigerant enters the compressor through an intake valve. The compressor then puts pressure on the refrigerant gas—compressing it—which raises the refrigerant's temperature and pushes the gas out through its discharge valve, then through the coils on the outside of the refrigerator. When the hot gas in the coils meets the cooler air temperature in the room, it becomes a liquid. The refrigerant then passes through an expansion valve, which decreases its pressure, and continues to flow through the coils inside the freezer and the refrigerator. As the cold liquid refrigerant moves through the coils, it cools the air in the refrigerator by absorbing the heat from the surrounding air. The refrigerant then evaporates into a gas, flows back to the compressor, and the process repeats.

27.     In the LG Refrigerators, the linear compressor and related parts, including the evaporator, are defective, causing the compressor to fail. The tubing of the evaporator is prone to corrosion and pitting from ordinary usage, whereby pinholes develop in the tubing. The pinholes cause leakage and allow air to enter the tubing, which causes the refrigerant to generate excess pressure as it flows from the evaporator to the condenser. The excess pressure puts additional stress on the compressor. The compressor's components are defective and unable to withstand the excess pressure, which also contaminates oil in the compressor.

28.     When a refrigerator's compressor fails, the refrigerator is unable to cool and freeze food and beverages, making it unfit for its intended use.

### A.     LG's Development and Marketing of the Linear Compressor

29.     LG first introduced its proprietary linear compressor in refrigerators in 2001. LG designed the linear compressor to be an energy-efficient, more reliable, and more durable compressor than the conventional rotary compressor used in many other refrigerators. Unlike rotary compressors that rely on circular motion, LG's linear compressor uses "a straight piston drive instead of a conventional reciprocating drive, resulting in less internal friction than conventional motors[,]" which in turn "increases the refrigerator's reliability and durability."[1]

30.     LG frequently touts "the outstanding benefits of its innovative Linear Compressor technology[,]"[2] such as energy efficiency, durability, reliability, and ability to keep foods fresher for longer periods of time, in its press releases, marketing materials, and advertisements.

---

[1] *See* LG press release, "10 Million Homes Benefiting From LG Refrigerators With Inverter Linear Compressor Technology," Nov. 24, 2014, available at http://www.lgnewsroom.com/2014/11/10-million-homes-benefiting-from-lg-refrigerators-with-inverter-linear-compressor-technology/ (last accessed June 10, 2019).

[2] *See* LG press release, "With Its Latest Core Technologies, LG Brings Whole New Value to Consumers' Lives." Sept. 1, 2010, available at http://www.lgnewsroom.com/2010/09/with-its-latest-core-technologies-lg-brings-whole-new-value-to-consumers-lives/ (last accessed June 10, 2019).

31.     For example, in a press release dated September 1, 2010, LG stated,

Refrigerators: LG Brings a Fresh Food Market Into Your Kitchen

With its newest range of refrigerators, LG will be revealing the outstanding benefits of its innovative Linear Compressor technology.

At the top of the range is LG's brand-new bottom-freezer. . . . And thanks to the Linear Compressor, the bottom-freezer keeps the interior temperature extremely steady -– keeping food as fresh as it is in a grocery store – while using up to 28 percent less energy than a regular A+-rated fridge. With efficiency like this, LG's new bottom-freezer allows consumers to reduce their electricity costs by up to 615 Euros (803 USD) over 10 years compared with A-rated refrigerators.[3]

32.     In addition to repeating the above claims of energy efficiency and temperature stability, in another press release dated May 27, 2011, LG added that "the bottom-freezer significantly improves heat exchange and keeps the fridge temperature even and cool in a more efficient manner." LG also stated that "[f]ewer friction points — one instead of the four in conventional compressors — work to significantly reduce noise levels. This enhances the product's durability, allowing LG to offer a 10 year warranty on the Linear Compressor motor."[4]

33.     In November 2014, LG published another press release, titled "10 Million Homes Benefiting From LG Refrigerators With Inverter Linear Compressor Technology," claiming "less wear to the refrigerator and helping it to achieve a 20 year life-span, a first in the industry."[5]

---

[3] *Id.*

[4] *See* LG press release, "LG Wins EU'S First A+++ AND A++ Energy Rankings for Bottom-Freezer and Side-By-Side Fridge." May 27, 2011, available at http://www.lgnewsroom.com/2011/05/lg-wins-eus-first-a-and-a-energy-rankings-for-bottom-freezer-and-side-by-side-fridge/ (last accessed June 10, 2019).

[5] *See* LG press release, Nov. 24, 2014, available at http://www.lgnewsroom.com/2014/11/10-million-homes-benefiting-from-lg-refrigerators-with-inverter-linear-compressor-technology/ (last accessed June 10, 2019).

34.     Year after year, LG continued to advertise that its linear compressor "enables the refrigerators to provide industry-leading energy efficiency and freshness, reduced noise levels and superior durability[,]"[6] "offers more precise cooling control,"[7] and savings due to lower electricity bills.

35.     LG's website and product pages have, in the past, and continue to repeat the claims stated in its press releases. For example, LG's webpage states:



36.     As conspicuously highlighted in its sales and marketing materials, LG provided all purchasers of the LG Refrigerators with an express warranty.

---

[6]   *See, e.g.*, LG press releases dated Apr. 25, 2014, available at http://www.lgnewsroom.com/2014/04/lg-refrigerator-with-inverter-linear-compressor-earns-industry-recognition/; Sept. 1, 2014, available at http://www.lgnewsroom.com/2014/09/lg-showcases-latest-range-of-energy-efficient-refrigerators-at-ifa-2014/.

[7] *Id.*

37.     Before January 1, 2018,[8] LG's express warranty on LG Refrigerators provided as follows:[9]

# WARRANTY (USA)

Should your LG Refrigerator ("Product") fail due to a defect in materials or workmanship under normal home use, during the warranty period set forth below, LG will at its option repair or replace the product. This limited warranty is valid only to the original retail purchaser of the product and applies only when purchased and used within the United States including U.S. Territories. Proof of original retail purchase is required to obtain warranty service under this limited warranty.

| WARRANTY PERIOD | | | |
|---|---|---|---|
| Refrigerator | Sealed System (Condenser, Dryer, Connecting Tube, Refrigerant and Evaporator) | | Linear Compressor |
| One (1) year from the date of original retail purchase | One (1) year from the date of original retail purchase | Seven (7) years from the date of original retail purchase | Ten (10) years from the date of original retail purchase |
| Parts and Labor (internal/functional parts only) | Parts and Labor | Parts only (Consumer will be charged for labor) | Part only (Consumer will be charged for labor) |

Noises associated with normal operation and failure to follow instructions found in the use and care and installation guides or operating the unit in an unsuitable environment will not be covered under this warranty.

▶ Replacement products and parts are warranted for the remaining portion of the original warranty period or ninety (90) days, whichever is greater.

▶ Replacement products and parts may be new or remanufactured.

THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. TO THE EXTENT ANY IMPLIED WARRANTY IS REQUIRED BY LAW, IT IS LIMITED IN DURATION TO THE EXPRESS WARRANTY PERIOD ABOVE. NEITHER THE MANUFACTURER NOR ITS U.S. DISTRIBUTOR SHALL BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL, OR PUNITIVE DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, LOST REVENUES OR PROFITS, OR ANY OTHER DAMAGE WHETHER BASED IN CONTRACT, TORT, OR OTHERWISE. Some states do not allow the exclusion or limitation of incidental or consequential damages or limitations on how long an implied warranty lasts, so the above exclusion or limitation may not apply to you. This warranty gives you specific legal rights and you may also have other rights that vary from state to state.

---

[8] "Important LG Refrigerator Warranty Information Announcement, Please Read." March 18, 2019, available at: https://lgcommunity.us.com/discussion/3871/important-lg-refrigerator-warranty-information-announcement-please-read (last accessed July 3, 2019).

38.     Effective January 1, 2018, however, LG changed the express warranty coverage

periods, regardless of the date of purchase, stating on its website:

> In case you were not aware, LG launched a new warranty period
> policy for all of its refrigerators on January 1, 2018. The new
> warranty extended its labor portion of the warranty to 5 years for
> its cooling (sealed) system components, please see below chart for
> details.

| New Cooling (Sealed) System Warranty Coverage | | |
|---|---|---|
| **Related Components** | **Parts Coverage** | **Labor Coverage** |
| Compressor<br>Evaporator<br>Condenser<br>Drier<br>Connection tube | 5 Years | 5 Years |
| Linear/Inverter Compressor | 10 Years | 5 Years |
| All other non-cooling system parts | 1 Year | 1 Year |
| *\* Coverage begins from the date of the purchase* | | |

> After consideration, we thought the same coverage should be
> benefited by all our consumers. **Accordingly, we are proud to
> honor the same warranty coverage to our consumers who
> purchased a LG refrigerator prior to January 1, 2018.** *For
> example, if it is now June 1, 2019, and you purchased your
> refrigerator on June 2, 2014, your refrigerator will be repaired as
> to the Cooling System with no cost to you whatsoever, parts or
> labor!*[10]

---

[9] LG Owners' Manual for refrigerator models LFX31925\*\* and LFX25991\*\*, available at: http://gscs-b2c.lge.com/downloadFile?fileId=KROWM000570652.pdf (last accessed July 3, 2019).

[10] "Important LG Refrigerator Warranty Information Announcement, Please Read." March 18, 2019, available at: https://lgcommunity.us.com/discussion/3871/important-lg-refrigerator-warranty-information-announcement-please-read (last accessed July 3, 2019) (emphases in original).

39.     Contrary to LG's statements, the LG Refrigerators do not keep "the interior temperature extremely steady" or "provide industry-leading energy efficiency and freshness," "superior durability," or reliability. Instead, the LG Refrigerators all suffer from a latent defect, which causes the LG Refrigerators to cease cooling and/or freezing food.

40.     The Compressor Defect causes the LG Refrigerators to become useless and unfit for their intended purpose significantly earlier than their anticipated useful life.

41.     The labor costs to diagnose and replace the defective compressors ranges from several hundred dollars to over a thousand dollars. The technicians that LG dispatches to consumers' homes often require multiple service visits to diagnose and repair a known problem.

42.     Consumers are forced to endure long periods without a functioning refrigerator and are forced to pay for repeated service visits. They also incur costs to rent substitute refrigerators, ice, and dining out of the home. For consumers who rely on refrigerators to store medication or special dietary ingredients or meals, the lack of a refrigerator is especially burdensome.

43.     Additionally, as the LG Refrigerators cease cooling food, frozen items often thaw and cause leakage from the Refrigerators onto consumers' kitchen floors.

44.     LG failed to disclose the Compressor Defect to consumers in any of its marketing or advertising, nor did it ever disclose the Compressor Defect to consumers at the point when they purchased the LG Refrigerators. Instead, LG highlights the quality and durability of the LG Refrigerators while concealing the existence of the Compressor Defect.

**B.     LG's Knowledge of the Compressor Defect**

45.     LG has long been aware of the Compressor Defect and that it was present in the LG Refrigerators before they were purchased, through among other things: (a) numerous consumer complaints and warranty claims, made online and directly to LG, of the defect, including

complaints regarding LG's failure to honor warranties; (b) the *Clark* litigation; (c); public news items; and (d) LG's non-public internal data, analyses, and communications.

46.     Thousands of complaints have been made online at mainstream websites, on LG's website, on the websites of LG's authorized sellers, on Twitter (referencing LG's Twitter "handle," *e.g.*, its Twitter account name), and on LG's Facebook pages. These complaints, a small sample of which are included below, reveal that LG, directly and through its network of authorized repair technicians, has been made aware of the Compressor Defect. In fact, LG representatives respond directly to consumer posts in online forums, on Twitter, or over Facebook. In addition, the complaints show that despite having such knowledge, LG often refused to diagnose the defect or otherwise attempt to repair it while the compressors were still under warranty. Moreover, when LG did attempt repairs, it merely replaced the defective compressor with another defective compressor.

47.     For example, hundreds, if not thousands, of consumers experiencing the defect and LG's repeated failures have formed a Facebook group—"LG Refrigerators – Life is NOT Good"— related to the defect. The group has over 1,600 followers and over 1,000 likes. The group's page contains hundreds of posts by consumers who experienced LG Refrigerator compressor failure and warranty issues.[11]

48.     A small sample of customer complaints posted online include the following:

> 8/3/11: "We purchased an LG fridge from Home Depot on the 19th of January 2011. This fridge went hot and destroyed most of our food on July 13th, 2011. I called LG and they ended up getting a technician out to the house that afternoon. LG said the issue was the control board, but the tech thought there was more. He ordered a compressor as well. Home Depot gave us a fridge to use in the mean time. They returned to fix this on the 26th of July. The panel

---

[11] LG Refrigerators – LIFE is NOT GOOD Facebook Group,   https://www.facebook.com/pg/ LgRefrigerators/posts/?ref=page_internal (last visited July 10, 2019).

didn't solve the issue so the tech went to install the compressor and found there was no freon in the system.

LG didn't believe this was the problem after two days of waiting, so the tech had to come back on Friday on the 29th of July to install an evaporator with UV chemical in it. The fridge had a bunch of freon on the charge side indicating a blockage somewhere in the system. We had to run the fridge for all weekend and then late Monday, came back to find it still was not cooling or working. LG, at this time, said they may replace it. After a bunch of calls to LG and getting nowhere, we finally are being told they will replace it. This is another 7-10 business days with no fridge and no results. LG informed us that they will NOT pay for destroyed food. I would not purchase another LG product. We have 4 other LG products in our house not including this fridge. The customer service sucks and response times are unacceptable."

8/9/11: "Side by side ref/frzr not cooling even though ref. temp at coldest setting 1 yr. and 5 days after purchase. Manufacturer will not do anything about it because it was a display model purchased at Best Buy. I am only sorry I did not check the consumer reports to realize what a piece of crap I was about to purchase. This situation gives new meaning to the term "planned obsolescence"; I would relish taking all of this crap back overseas and shove it all down someone's throat!!"

8/19/11: "I bought an LG side by side refrigerator for my home. Recently, I am a divorced single mother of a 2 year old, trying to start over. Here it is, one and a half years later and my fridge totally thawed out all of my meat in my refrigerator. My milk is spoiled and all of my meat and vegetables are rotted and ruined. I am barely scraping by paying the bills, starting over again and I should not have to be buying a fridge after a 1 1/2 years. This is ridiculous.

Customer services are good in telling you that your warranty ended at 1 year and that is it. No, they have no sympathy. If it wasn't for good friends letting us eat with them for the next two weeks when I get paid, we would be without food. I can't buy groceries twice. I can't buy refrigerators twice. This is ridiculous! I am telling everyone not to buy anything LG. Beware, some Kenmore refrigerators are made by LG now too."

2/2/12: ". . . Four years to the day, after plugging in our new fridge, the compressor failed. That was November 22, 2011. I am

14

sending this note on February 2, 2012, and we are still waiting for parts to repair the new LG."

3/14/12: "On September 8, 2011, our freezer was not working - no ice, meats were all soft. I had someone come out to look at it. I put $100 out and they could do nothing. I had another company come out and after twice coming out, they had to replace our compressor which was under warranty but not the labor. Now here it is, March 14, 2012 and I went to get meat out of the freezer and it is soft and my ice cubes are very watery. What a piece of junk this is! And the rest of our appliances are LG! I am very angry and upset!"

5/26/12: "After a week and a half of dancing with technicians and various customer support people, we now find our LG refrigerator cannot be fixed. We purchased an LG LFC25770SG on the last day of December 2008 and took delivery in January 2009. Three years and four months later, the compressor has died. When we first discovered the problem, we were shocked the warranty was only for a year. However, some parts are covered for seven years and our compressor is one of them (partial warranty as part is covered but service is not).
I could give you the blow-by-blow description of the frustrating customer support calls, three service technician visits, multiple incorrect part deliveries, and going into the Memorial Day Weekend (a traditional barbecue weekend for us) with no refrigerator, no solution to the problem and no sense of urgency by LG in correcting the situation. . . ."


12/17/12: "LG French door model - I purchased one of the most expensive fridges in the LG lineup about 3.5 years ago. It stopped working - no cold air anywhere. I called LG, and they offered me a flat rate deal to send a technician and fix the fridge (about $210). I paid and a technician came. The problem was the compressor relay. He could not order the part because it was discontinued. It took LG 4 weeks to agree that the part was not available (during that time, I was without a fridge). Every time I called to inquire, they told me to be patient. Now, their only offer is to pro-rate the fridge value and pay me around $900 towards the value of a new LG Fridge. I asked for a replacement; they refused. To add insult to injury, they said I am not even getting back the full $210 repair cost because the technician still has to get paid, although nothing was fixed. LG makes a wide range of goods. I will not be buying any of their products, ever."

5/23/13: "I bought my brand new LG fridge in 2008 because it had a lot of room inside. After a couple of months, I've been having problems since; there were issues after issues. First, it was the ice maker that I needed fixed then it was the fuse. After that, it was the French doors that rubbed against each other so I couldn't close it. Then it was the side vent inside the fridge. Now, it's my compressor that's not working; that's what the service guy told me yesterday. It's on but it's just blowing hot air inside the fridge and freezer. An LG fridge is not cheap to buy, but it is cheaply made! This LG fridge has caused me so much down time and headache from the day I bought it!"

7/2/13: "LG supervisor said that 3 items for my fridge are still under warranty and one of the items is a compressor. I asked the supervisor to send the compressor to me, but instead they want to send the compressor to their technician and the technician must come to my house. I had an experience with the technician about 2 weeks ago and the technician wanted to charge me over $400 for a problem that may not be the problem, and would charge me to fix other problems that might be the problem. Ripoff. Also, when the technician was at my house, he and the office said one thing to me but a different story to LG. I am in my 3rd week without a fridge. I spend money on ice, outside food and cold drinks."

7/24/13: "Purchased an LG refrigerator LMC25780, spent over $1,700. After just 2 years in service the freezer started getting warm. Lost all of the food. Called the LG service number and was told the unit was out of warranty, except major parts. The technical came out today and said the compressor is bad and will have to order a new one. The compressor is still under warranty but I still have to pay for the service call at $250. What a ripoff scam they have going. NEVER AGAIN WILL I PURCHASE AN LG PRODUCT."

8/10/13: "We had this beautiful fridge installed in June of 2012 and right away the freezer compartment spilled ice all over the floor when you opened the freezer drawer. The repairman messed with the seal on one visit, then replaced the seal on another visit and finally replaced the freezer door on the third visit. Problem with that was then resolved. Was gone for three months and back home for summer and the freezer quit working on July 4 - water all over the hard wood floors and freezer food thawed--they came out and did repairs on a fan. A week later the same thing happened - came out - needs new compressor. Came out with the right part no. on the box, but when he went to install it, wrong compressor - could not even restart the fridge section - so without fridge too.

16

Yesterday they installed the correct compressor and freezer won't go below 29 degrees"

11/4/13: "We bought the LG LFX25978ST French door refrigerator on 5-1-2013 from HH Gregg. Was working okay until Oct 5, 2013 (5 months) when it suddenly stopped making ice & freezer contents were mushy, soft. Called LG. They told me to reset the ice maker & it should be fine. Reset twice, still no ice. Called LG on Oct 6th again. They told me to get a new filter or bypass plug (which should have been left with me when they delivered) which I did on Oct 7th. Put the bypass plug in... still no ice & freezer not freezing. Called LG back. They said they would schedule a service tech to repair. After several calls from the repair people about the date of purchase, serial #, model # finally they said they would have to order a new ice maker & when the parts came in they would schedule the repair.

Finally came out on Oct 17th!! 12 days with no ice & very little freezer. Had to buy ice & use ice trays in my garage freezer. When the repairman came out on Oct 17th, he had a new motherboard & a new ice maker.... Took him 2 hours to replace the ice maker in the door... Had to take it back out several times because the ice container was too tight. He said it would take 8 hours to make ice, to call him in the morning if it did not. Well... still no ice & worst now... no freezer. Lost about $80.00 of food... ice cream melted completely & all over the bottom. Called the repair service next day Oct 18th, told them no freezer, no ice. They told me they would send the tech out again but could not until Oct 21st.

Also called LG about my defective refrigerator. They said it wasn't defective & they would not replace it until it was deemed unrepairable. Very unsympathetic & rude! They told me I must allow them to repair. Repairman came back out Oct 21st & was on the phone to LG Tech. Put thermometers in freezer & refrigerator was finally diagnosed as a bad compressor!! This refrigerator is only 5 months old!!! I had a Frigidaire before that was 16 yrs old & I never had a bad compressor. Called LG again & asked what they were going to do about my refrigerator. They told me that it was not unrepairable. That I had to allow them to replace the compressor or they would do nothing!!!!"

49.     LG was also aware of the Compressor Defect through the information it obtained during and in preparation for the *Clark* litigation, which commenced on February 28, 2013 and terminated on May 15, 2015.

50.     Even after settling *Clark*, LG has continued selling refrigerators containing the defective linear compressor with reported failures at astonishingly high rates.

51.     For example, consumers continue to post numerous complaints on the community boards of LG's own website, where LG representatives often respond directly to the complaints, showing LG is aware of the problems. For example:

(a)     On November 27, 2017,  a consumer, DLeavens, complained,

LFC25776ST French door fridge was working great for 5 years
and suddenly almost completely stopped cooling. Lowering temp
settings doesn't make a difference over 48 hours. All items in
freezer have melted. No more ice making. Main compartment also
not cold. What are next steps to fix this problem?

(b)     On June 15, 2018,  another consumer, RHD, complained,

Has anyone else had to submit service records to LG for review
and if so, where/who did you send them to (email/fax, etc)? Less
than 2 year old LG French Door stopped making ice and
maintaining proper temps for frig & freezer. Called local repair
place who diagnosed as sealed system leak and said to call LG b/c
7 year warranty (cost $95). LG customer support gave me local
authorized dealer (Expert Appliance who services all of Northeast
FL). They didn't come for 2 weeks, but came out for $85 to agree
with my local repair guy. Ordered parts (compressor, evaporator,
etc) and 2 weeks later, installed that to the tune of $200 for labor.
That was 3 months ago. Since then, they've returned 5 more times
because the frig does not work at all (frig temps 60; freezer temps
40). Expert Appliance makes us wait weeks each time and take the
entire day off work (will not make an appt just says they'll come
sometime that day). Living for months without food or beverages
except what's in a cooler with ice. Compressor and dryer have been
replaced a second time, thermometer inside worked on, they
welded some little copper tubing- you name it, they've done it.
Expert told us on the last 2 visits that they don't know what else to
do. I called LG and said that we want a refund or new unit. LG

18

customer service said that that Expert needs to submit all service records and LG Technical Specialist will review the records and either make new recommendations for Expert if they've missed something or give us a new frig. The problem now is that Expert says that they don't know where or who to send the records to. I called LG, after an hour and having to ask for a supervisor, finally was given an 800# for Expert to call. Expert office staff claims she called and LG said they couldn't help her/didn't understand what she wanted. I have very little faith that Expert office staff even really tried, but at this point, I don't believe anything that LG says or Expert appliance because I've been given so many different answers. Thanks.

After two more updates posted by the same consumer, an LG representative, sanmi

responded on September 6, 2018:

HI @RHD
Thanks for posting your updates here, I am also following every thread on the forum to ensure you get a good customer experience. I will be checking up on this too.

(c)    On August 25, 2018, a consumer, hoggatt, complained:

We have a 2 year old LG refrigerator modelLFXS30766S that stopped cooling, both freezer and refrigerator. We called LG and their smart phone diagnosis said the compressor needed to be replaced.  Technician was out Friday and replaced compressor for a $375 charge. We were told to wait 24 hours and not open fridge. After waiting the 24 hours, fridge was hot and not working. We called LG and the Customer service would not diagnose to confirm the problem. Said the earliest a repairman could come is Tuesday between 1:00 & 5:00. This means we are still without a working refrigerator for 4 more days and we will have to take another day off of work to hopefully get this repaired. Very frustrating that this issue is not more quickly corrected. Looking on the web this is a very common problem with LG refrigerators. I would like to hear from LG about better service. There should be some solution for this defective appliance.

On November 26, 2018, three months later, an LG representative, sanmi, responded: "Hi @hoggatt I am so sorry to hear about your experience, I hope you have been able to get a resolution for this issue." On March 13, 2019, another LG representative, JamalofLG, responded:

hoggatt, I see you commented about issues with your refrigerator not cooling. If you still require assistance, LG is providing warranty labor coverage up to 5 yrs., from the date of purchase, for sealed system issues on refrigerators. If you still need a repair, please call our Customer Interactive Center at 800-243-0000 where any agent will provide you with 5 year coverage for parts and labor on the sealed system. Or you can visit this link: {https://refrigerators.lgsupport.com/hc/en-us/requests/new }, and provide the needed info and we will reply within 24 business hrs.

(d)    On October 16, 2018, a consumer, awoyer, complained:

I have recently had to contact LG customer support due to the compressor failing in my refrigerator. They have a guarantee to service any location in the united states which I thought was wonderful. You have to be an LG certified technician in order to work on an appliance or it voids all warranties if not. I called on October 3rd to get help and they informed me that my refrigerator was still under the factory warranty for parts and that they would find someone to come out and fix my refrigerator and that they would also cover labor for said repairs. I thought wow this is amazing. The lovely supervisor told me I would hear from someone within 24 hours. I thought ok I can deal without my refrigerator in my home another day or two since they were so nice and understanding. 48 hours later still no word from anyone so I called back. The lovely lady on the phone said they were having a hard time finding someone to service in my area but she would keep trying. She was also putting in a note to the next level in case she cannot find someone. She assured me this would get resolved in a timely fashion. Once again I was pleased with the customer service aspect of this situation thus far on October 5th. On Monday October 8th I received a phone call from LG stating they were still experiencing difficulty in finding someone to service my refrigerator in my area. Now let me tell you I do not live in a small town by any means so I am not sure why this is such an issue but once again I was told that this was being escalated to the next level and that if they could not find anyone within the next 3-5 days to fix my refrigerator that it would be replaced since they were not standing next to their guarantee. So at this point I said ok I need to wait another 3-5 days for resolution or they will make this right. After a long 2 weeks of no refrigerator in my house I get a phone call on Monday October 15th to let me know there is still no resolution and that since they cannot find someone to fix my refrigerator they are willing to send me a check for $1400. I am obviously not happy with this resolution since I paid $3000 for the refrigerator 5 years ago and have lost over $1000 in groceries in

my refrigerator as well as waited patiently 2 weeks for resolution.
Lisa which is who I spoke with was extremely rude and not
understanding at all. She said sorry this is all I can do for you.
After being told by a supervisor that they were covering the cost of
repairs for parts and labor, Lisa said if I wanted to find someone to
fix it they would cover parts only and any warranty I have on the
refrigerator after that would be voided since it would not be an LG
certified repair specialist. Am I the only one that has had such bad
luck with LG? My husband did not want to get an LG because he
has heard such bad reviews but the LG customer service Rep
assured us when we purchased the refrigerator that this would not
be an issue. I hope that this is not the way LG prefers to handle
customers and that I got poor customer service on accident. If
anyone has any tips on how else to get this resolved please help!
Thank You.

On November 26, 2018, three months later, an LG representative, sanmi, responded: "Hi

@awoyer I am sorry to read about your experience, I am sure our team tried their best to get a

repair technician close to your area but they couldnt get one. Have you been able to come to a

resolution with Lisa?"

(e)     On May 28, 2019, a consumer, bpd33, complained:

I have been completely getting the run around from customer
service about by broken fridge. It is only 2 years old and not
cooling or freezing had to through out all our food and have not
been able to buy any . It this normal for LG ? two weeks and no
answer.

That same day, a different consumer, ulypad, responded to bpd33, stating:

I got the same issue, i bought it 2013, but then had a first
breakdown 2014. Was fixed that time however this weekend it
breakdown again.

Also on May 28, 2019, another consumer, AlanS, responded to bpd33, stating:

It appears to be a common issue. I got a stainless French door and
double door that broke down in less than two years. After waiting a
little less than 4 weeks it was finally fixed, only to be broken again
last week.

(f)     On May 31, 2019, a consumer, Arcee, complained:

> Just wanted to let you know that the scheduled repair service appointment on my refrigerator by A &E Factory was a no show. I called A&E the day before to confirm the appointment and was told it is confirmed. The day of the appointment, I left work early to make sure I'm home before the service tech comes in. 5 pm passed still no technician. Called A & E again and was told I'm still scheduled to be serviced. It is 9:30 pm and I don't think there will be a technician will be knocking on my door. Shame on you LG for poor post-sale service and using A & E as your service provider. I can't comprehend why a billion dollar company uses a dysfunctional repair service company. Just do your company a favor use a better service provider if you don't want to lose more customers. For a billion dollar company, you should have your own repair service department. Now I have $2800 paperweight in my kitchen.

52.     LG's continued sales of the LG Refrigerators despite its knowledge of the Compressor Defect and failure to adequately address the known problems arising from the defect even after the *Clark* litigation is also apparent in news reports. For example, according to one television news report in July 2017, a frustrated LG refrigerator owner contacted a local television news station after numerous delays in getting the compressor in her $2,200 LG refrigerator repaired.[12] The consumer reportedly contacted "over a dozen [LG] authorized workers," none of whom would perform the repair work. The consumer reported, "I spent 10 hours making phone calls between LG and private servicer that LG recommended," without success.

53.     Another consumer contacted his local news station in July 2017 for help after his $1,450 LG refrigerator failed only 10 months after purchase due to compressor failure.[13] After two service visits and a replacement compressor failed to fix the problem, LG denied the consumer's claim for a new refrigerator, reportedly stating that the consumer would have to wait for another

---

[12]   "CT woman given runaround about repairs." July 13, 2017, available at: https://www.wfsb.com/news/ct-woman-given-runaround-about-repairs/article_3cb755d1-42ab-5153-9074-8746215e34f6.html (last accessed July 10, 2019).

[13]   "Metro family left losing its cool after getting caught in limbo with busted refrigerator." July 20, 2017, available at: https://fox4kc.com/2017/07/20/metro-family-left-losing-its-cool-after-getting-caught-in-limbo-with-busted-refrigerator/ (last accessed July 10, 2019).

service visit to attempt repair. Only after the local news station "called LG and left multiple messages" did LG state that it would provide a new refrigerator. Until that time, the consumer and his family of six relied on a cooler to preserve their food in lieu of a working refrigerator for over three weeks in the middle of summer.

54.     In September 2017[14] and again in June 2018,[15] a local news station in San Diego contacted LG on behalf of two owners of LG refrigerators who experienced delays in getting their refrigerators repaired after experiencing compressor failures. In the September 2017 report, a man from Escondido complained that after his two-year old refrigerator failed, an LG technician diagnosed but was unable to fix the problem on an initial service visit. LG charged him for the service visit and an extended warranty, yet failed to replace the compressor or otherwise address the customer's concerns until contacted by the news station. In the June 2018 report, a woman from Serra Mesa recounted repeated failures with her LG refrigerator purchased in 2013. By the time she contacted the news station, the refrigerator already had its compressor replaced and was failing for the third time despite eleven or twelve prior service visits. The news station contacted both Home Depot, from whom the customer purchased an additional extended warranty, and LG. Although Home Depot eventually honored the customer's warranty, LG did not respond to the news station.

55.     Another television news report, aired in December 2018, titled "'Pandemic' of dying LG fridges has log-jammed repair workers" included interviews of consumers with failed

---

[14] "Responds Shorts: From Freezers to Overcharges." Sept. 12, 2017, available at: https://www.nbcsandiego.com/news/local/Responds-Shorts-From-Freezers-to-Overcharges-444063603.html (last accessed July 10, 2019).

[15] "Serra Mesa Woman Feeling Fridge Frustrations." June 5, 2018, available at: https://www.nbcsandiego.com/news/Mira-Mesa-Woman-Feeling-Fridge-Frustrations-484626641.html (last accessed July 10, 2019).

refrigerators and repair technicians reporting the same problems.[16] One repair person stated that he told LG that his company would no longer work on LG refrigerators because of the high rate of repair failures and related problems. He stated that "[LG's] refrigerators are failing quite pandemically" and that "it's a national thing."

56.     LG gained direct knowledge of the defect through its role as the designer and manufacturer of the compressor product at issue. One publicly available white paper prepared by three LG Senior Research Engineers in 2002 summarized the results of various tests performed on early versions of the linear compressor, including reliability tests. Notably, LG's engineers stated that "[t]he average life of the compressors in the refrigerators is more than 10 years even in any severe operating conditions. In order to operate over its life-long period, the linear motor should pass the same reliability tests that are commonly applied to the conventional rotary motors." The white paper also outlined additional tests required for linear motors in linear compressors to avoid design problems leading to compressor failure.[17] LG performed internal testing and analysis specifically relating to compressor failure and has exclusive and direct knowledge of the Compressor Defect and the scale of resulting problems through its own internal testing and analyses, and via other internal data and communications.

57.     Despite the wealth of public and non-public information showing LG's knowledge of this widespread defect, LG has actively concealed and failed to disclose this defect, and made misleading misstatements regarding the LG Refrigerators and their linear compressors, to Plaintiffs and Class members at the time of purchase and thereafter.

---

[16] "'Pandemic' of dying LG fridges has log-jammed repair workers." Dec. 14, 2018, available at: https://kutv.com/news/get-gephardt/pandemic-of-dying-lg-fridges-has-log-jammed-repair-workers. (last accessed July 10, 2019).

[17] Park, K.; Hong, E.; and Lee, H. K., " Linear Motor For Linear Compressor " (2002). International Compressor Engineering Conference. Paper 1544. https://docs.lib.purdue.edu/icec/1544 (last visited July 10, 2019).

### C.     LG's Warranty Service Is Inadequate

58.     As is evident from the online complaints and news reports, consumers reporting the Compressor Defect have also voiced frustration with LG's warranty service and/or the warranty service of its authorized sellers and repair providers. Although LG has been well aware of the defect for many years, LG replaces the defective compressor and component parts with similarly defective parts, causing consumers to incur additional, unnecessary costs without correcting the defect.

59.     On some occasions, LG explicitly informs customers that the repairs are not covered under warranty, even when the complaint is reported within the warranty period. When customers continue to press the issue, LG representatives then relent and admit the repair cost will be covered.

60.     LG also requires consumers to wait for repair providers overwhelmed with compressor repairs to obtain a replacement compressor and attempt the repair. LG inexplicably maintains a policy whereby its technicians are not permitted to bring replacement compressors to the initial visit, thereby extending the time consumers must wait before receiving a repair.

61.     Moreover, the repairs are temporary because the replacement parts are equally defective.

62.     Additionally, until 2018, LG required consumers to pay for the labor associated with replacing the defective compressor if the repair occurred after the first year of ownership because LG covered only the cost of replacement parts. LG also often required customers to pay for initial diagnostic service visits. Such costs generally range from $60 to over $1,000.

63.     Even if LG pays labor costs for some consumers, its warranty performance, and the warranty performance of its authorized agents, is deficient and manipulative. LG repeatedly delays

actual replacement of the compressor by refusing to acknowledge a known problem when the consumer first reports refrigerator failures and by mandating numerous unnecessary service visits before its technicians are allowed to replace the compressor. Plaintiffs and Class members overpaid for their LG Refrigerators because of the defective compressor, and those who experienced the defect must make do without a refrigerator while waiting for LG to respond to the problem and arrange for repairs.

64.     LG has not implemented an effective remedy for those who suffer the Compressor Defect. Instead, LG continues to replace their defective compressors with other defective compressors.

**D.     Plaintiffs' Experiences Regarding the LG Refrigerators**

**1.     *Plaintiff Rex Tabora***

65.     On or around October 19, 2015, Plaintiff Rex Tabora purchased a new LG Refrigerator, Model LMXC23746D.ASBCNA0, for approximately $2,588.99 from the website of a retail store named Goedecker's.

66.     Plaintiff Tabora chose an LG refrigerator in part because he understood LG's refrigerators to be reliable, fully functional for an above-average period of time, high-quality, and designed with premium features. Before purchasing the LG Refrigerator, Plaintiff Tabora saw and read sales materials representing these characteristics as present in the LG Refrigerator and was aware of the existence of a warranty that would cover certain defects, all of which were material factors in Plaintiff Tabora's decision to purchase the LG Refrigerator.

67.     Before using the LG Refrigerator, Plaintiff Tabora was provided with additional information about the LG Refrigerator and its compressor in product brochures and owners' manuals, but did not see or receive any disclosures regarding the Compressor Defect.

68.     Plaintiff Tabora's LG Refrigerator was installed, maintained, and repaired consistent with LG factory recommendations. At all times, Plaintiff Tabora used and maintained the LG Refrigerator consistent with expected use for a household refrigerator.

69.     In or around September 2017, Plaintiff Tabora's refrigerator failed from the Compressor Defect. The refrigerator and freezer failed to keep food and beverages appropriately cool and/or frozen, causing the food and beverages to spoil. The ice maker stopped producing ice, preventing Plaintiff Tabora from temporarily keeping food and beverages cold by using ice.

70.     As a result, Plaintiff Tabora was forced to throw away the food and beverages that spoiled and thawed in the refrigerator.

71.     Plaintiff Tabora contacted LG to request repairs. LG dispatched a repair technician to Plaintiff's home, who "[i]nspected the unit and found [a] leak from the evaporator." The technician then replaced the compressor, evaporator, and other parts. Plaintiff Tabora paid $375.00 for this service visit.

72.     The repair technician who replaced the compressor described the Compressor Defect as a design defect, telling Plaintiff Tabora that the piping of the refrigerator was located too close to the frame, so when the compressor vibrates, it causes cracking, and that it was a common problem with LG refrigerators.

73.     In addition to the spoiled food and beverages that Plaintiff Tabora lost, he was forced to take a day off work to wait at home for the service visit to repair his LG Refrigerator. Plaintiff Tabora also paid $375.00 for the repairs.

74.     Plaintiff Tabora suffered an ascertainable loss due to LG's omissions and/or misrepresentations relating to the Compressor Defect. Had LG disclosed its knowledge of the Compressor Defect before Plaintiff Tabora purchased his LG Refrigerator, he would have seen

27

such disclosures and been aware of them. LG's omissions were material to Plaintiff, as he would not have purchased the LG Refrigerator or would not have paid the premium price that was paid for the LG Refrigerator, had he known it contained the Compressor Defect.

### 2.    *Plaintiffs Bernie Hmurovich and Sarah Johnson*

75.    On or about July 13, 2016, Plaintiffs Bernie Hmurovich and Sarah Johnson purchased a new LG Refrigerator, Model LFXS29766S, for approximately $2,198.00 from a Home Depot store in Elk River, Minnesota.

76.    Mr. Hmurovich paid for the LG Refrigerator for the household he shares with his daughter, Plaintiff Sarah Johnson, and her family.

77.    The LG refrigerator was chosen because it was understood that LG's refrigerators were reliable, fully functional for an above-average period of time, high-quality, and designed with premium features. Before purchasing the refrigerator, Ms. Johnson saw sales materials representing these characteristics as present in the LG Refrigerator and was aware of the existence of a warranty that would cover certain defects, all of which were material factors in the decision to choose the LG Refrigerator. In addition to the warranty offered by LG, Plaintiffs also purchased an extended warranty, the Home Depot Protection Plan, provided by Asurion, a third-party warranty provider. The Asurion extended warranty covered parts and labor for three years from the date of original purchase.

78.    Before using the refrigerator, Mr. Hmurovich and Ms. Johnson were provided with additional information about the LG Refrigerator and its compressor in product brochures and owners' manuals, but did not see or receive any disclosures regarding the Compressor Defect.

79.   Plaintiffs' LG Refrigerator was installed, maintained, and repaired consistent with LG factory recommendations. At all times, Ms. Johnson and her family used and maintained the refrigerator consistent with and in accordance with the expected use for a household refrigerator.

80.   In January 2019, Plaintiffs' refrigerator failed from the compressor defect. The freezer completely, causing the food and beverages to spoil. At that time, Plaintiffs did not initially notice that the refrigeration portion of the unit also began to fail, becoming gradually warmer.

81.   As a result, Ms. Johnson was forced to throw away the food and beverages that spoiled and thawed in the freezer.

82.   Because Ms. Johnson and her family were about to leave for an extended vacation and no one would be home to permit service visits, Ms. Johnson first contacted Asurion to report the refrigerator failure and request repairs after they returned from vacation in late February 2019. Over the course of nearly two months, Ms. Johnson was forced to make over fifty phone calls and several online chat conversations with Asurion to effectuate repairs. After multiple service visits in which Asurion technicians replaced multiple parts, Asurion informed Ms. Johnson that there was nothing more for them to do, leaving her with a completely broken freezer that could not make ice. The refrigeration portion of the unit was unable to maintain a temperature below 50 degrees.

83.   In late April 2019, with the refrigerator not being fixed, Ms. Johnson next contacted LG to request repairs. Similar to her experience with Asurion, Ms. Johnson had to repeatedly initiate contact with LG to seek status updates and next steps after failed repair attempts. On the first service visit, LG's repair technician determined that the compressor failed and needed replacement. He also advised Ms. Johnson that she should not store any food in the refrigerator because its inability to maintain appropriately cool temperatures would not adequately preserve food that was safe to eat. On the next service visit, only after LG's repair technician opened the

internal compartments of Ms. Johnson's refrigerator did he notice that the wrong compressor had been sent as the replacement. The LG technician returned a third time to replace the compressor, but the new compressor did not fix Ms. Johnson's refrigerator. Several subsequent service visits and repairs also failed to correct the problem.

84.     Over the past five months, Ms. Johnson has initiated well over seventy phone calls, emails, and online chat discussions and had numerous service visits. But Ms. Johnson's refrigerator has never been fixed. It buzzes and hums loudly, does not make ice, and has now started spraying water onto her kitchen floor. The sheer volume of water gushing from her refrigerator spilled into other rooms, caused damage to her floors and cabinets, and took three days to dry completely.

85.     Several repair technicians informed Ms. Johnson that they spend considerable amounts of time repairing and diagnosing problems related to the Compressor Defect generally. They also stated that LG's compressors are defective, and that after the compressor is replaced, other problems arise as a result. Accordingly, as one repair person specifically warned Ms. Johnson, her LG Refrigerator will never operate as normally as it had before the compressor failure.

86.     In addition, Ms. Johnson was forced to stay home from work to wait while repair workers failed to appear at scheduled times without notice or made one ineffective repair after another. Additionally, the refrigerator's recent malfunction in spraying water is now causing damage to her kitchen. Moreover, the loss of a functioning refrigerator for nearly five months has imposed a considerable burden on Ms. Johnson and her family.

87.     Mr. Hmurovich and Ms. Johnson have suffered an ascertainable loss due to LG's omissions and/or misrepresentations relating to the Compressor Defect. Had LG disclosed its

knowledge of the Compressor Defect before the purchase, Plaintiffs would have seen such disclosures and been aware of them. LG's omissions were material to Mr. Hmurovich and Ms. Johnson, as they would not have purchased the LG Refrigerator or would not have paid the premium price that they paid for the LG Refrigerator, had they known it contained the Compressor Defect.

### 3. *Plaintiff Lenny Martinez*

88. On or around November 28, 2015, Plaintiff Lenny Martinez purchased a new LG Refrigerator, Model LSXS26366S.ASTCNA0, for approximately $1,499.99 from a Conn's retail store in Albuquerque, New Mexico.

89. Plaintiff Martinez chose an LG refrigerator in part because he understood LG's refrigerators to be reliable, fully functional for an above-average period of time, high-quality, and designed with premium features. Before purchasing the LG Refrigerator, Plaintiff Martinez saw and read sales materials representing these characteristics as present in the LG Refrigerator and was aware of the existence of a warranty that would cover certain defects, all of which were material factors in Plaintiff Martinez's decision to purchase the LG Refrigerator.

90. Before using the LG Refrigerator, Plaintiff Martinez was provided with additional information about the LG Refrigerator and its compressor in product brochures and owners' manuals, but did not see or receive any disclosures regarding the Compressor Defect.

91. Plaintiff Martinez's LG Refrigerator was installed, maintained, and repaired consistent with LG factory recommendations. At all times, Plaintiff Martinez used and maintained the LG Refrigerator consistent with and in accordance with the expected use for a household refrigerator.

92.    On or around July 4, 2019, Plaintiff Martinez's refrigerator failed from the Compressor Defect. The refrigerator and freezer failed to keep food and beverages appropriately cool and/or frozen, causing the food and beverages to spoil. The ice maker stopped producing ice, preventing Plaintiff Martinez from temporarily keeping food and beverages cold by using ice.

93.    As a result, Plaintiff Martinez was forced to throw away the food and beverages that spoiled and thawed in the refrigerator.

94.    Plaintiff Martinez first consulted LG's online support library and performed several troubleshooting procedures recommended by LG, none of which corrected the refrigerator failure. Among other measures taken, Plaintiff checked that the coils in the back of the refrigerator were clean and dust-free, unplugged and re-plugged the unit in, and repositioned items in the refrigerator to improve air flow and circulation.

95.    After finding that LG's suggested troubleshooting techniques did not work, Plaintiff Martinez contacted LG to request repairs. The LG representative first directed him to activate the SmartDiagnosis remote technology, which showed no indication of compressor failure or any other problems. The LG representative then informed Plaintiff that he must find his own local repair technician and schedule the repair because LG did not have any service technicians in Plaintiff's area. LG further directed Plaintiff that he should only engage service technicians who are qualified to perform services under LG's warranty procedures if he wanted LG to pay for the expenses. Once the service technician rendered a diagnosis, LG would then send the technician an authorization letter to perform the specific repairs identified as necessary. However, the LG representative also stated that LG would only cover costs for parts under warranty, including the sealed system and compressor, but not for labor.

96.    Within the next day or two, Plaintiff Martinez contacted several local appliance repair companies and scheduled one of them, Mr. Appliance of Rio Rancho, to inspect his refrigerator. Plaintiff confirmed with Mr. Appliance that they were authorized to service LG refrigerators under warranty.

97.    Later that week, a service technician from Mr. Appliance visited Plaintiff's home. Upon arrival, the service technician asked if the refrigerator was an LG and stated that he had encountered the Compressor Defect in many LG refrigerators. He then inspected the unit and found the refrigerator and freezer both running at approximately 50 to 60 degrees Fahrenheit. The repair technician recommended a compressor replacement and charged Plaintiff $89.99 for the diagnostic visit.

98.    Over the next week, Plaintiff Martinez exchanged several telephone calls with Mr. Appliance to determine the status of the availability of in-stock replacement compressors, LG's authorization to order the parts, and scheduling the visit to replace the compressor.

99.    On or around July 17, 2019, an LG representative informed Plaintiff, for the first time, that Mr. Appliance was not authorized to replace Plaintiff's compressor, so LG would not cover the cost of any parts or labor performed by or through Mr. Appliance. The LG representative also stated, for the first time, that LG would schedule its own technician to inspect Plaintiff's refrigerator.

100.    On or around July 18, 2019, Mr. Appliance's technician visited Plaintiff's home without any prior notice. Plaintiff was not home at the time, and his wife was unable to stay home to allow the technician to repair the refrigerator due to her schedule. The next day, LG's service technician then called to inform Plaintiff that the new compressor would be ordered and a service visit scheduled. To date, Plaintiff Martinez's LG Refrigerator has not been repaired.

101.    In addition to economic losses resulting from spoiled food and beverages, Plaintiff paid approximately $89.99 for Mr. Appliance's service visit to diagnose his LG Refrigerator. LG has refused Plaintiff's repeated requests for reimbursement for the lost food and the $89.99. Because Plaintiff has been without a working refrigerator for nearly a month, Plaintiff and his family have also incurred additional costs from dining out of the home, ordering takeout meals, and buying ice to store small amounts of necessary food and beverages in a cooler.

102.    Plaintiff Martinez has suffered an ascertainable loss due to LG's omissions and/or misrepresentations relating to the Compressor Defect. Had LG disclosed its knowledge of the Compressor Defect before Plaintiff Martinez purchased his LG Refrigerator, he would have seen such disclosures and been aware of them. LG's omissions were material to Plaintiff, as he would not have purchased the LG Refrigerator or would not have paid the premium price that he paid for the LG Refrigerator, had he known it contained the Compressor Defect.

### 4.    New York Plaintiff Eva Perez

103.    In or around September 2014, Plaintiff Eva Perez purchased an LG Refrigerator, Model LFC28768ST, for approximately $1,500, from a Sears store in Connecticut. Ms. Perez believes the exact price will be available from Sears' records.

104.    Plaintiff Perez chose an LG refrigerator in part because she understood LG's refrigerators to be reliable, fully functional for an above-average period of time, high-quality, and designed with premium features. Before purchasing the refrigerator, Plaintiff Perez saw sales materials representing these characteristics as present in the LG Refrigerator and was aware of the existence of a warranty that would cover certain defects, all of which were material factors in Plaintiff Perez's decision to purchase the LG Refrigerator.

34

105.    Before using the refrigerator, Plaintiff Perez was provided with additional information about the LG Refrigerator and its compressor in product brochures and owners' manuals, but did not see or receive any disclosures regarding the Compressor Defect.

106.    Plaintiff Perez's LG Refrigerator was installed, maintained, and repaired consistent with LG factory recommendations. At all times, Plaintiff Perez used and maintained the refrigerator consistent with and in accordance with the expected use for a household refrigerator.

107.    In May 2019, Plaintiff Perez's refrigerator failed from the compressor defect. The refrigerator and freezer failed to keep food and beverages appropriately cool and/or frozen, causing the food and beverages to spoil.

108.    As a result, Plaintiff Perez was forced to throw away the food and beverages that spoiled and thawed in the refrigerator.

109.    Plaintiff Perez contacted Sears to report the failure and request repairs. Sears dispatched a repair technician to Plaintiff's home, who determined that the compressor needed to be replaced and advised that Plaintiff Perez would have to call LG directly to arrange for the compressor replacement. Plaintiff Perez paid $135.47 for this diagnostic service visit.

110.    Plaintiff Perez then contacted LG, who scheduled a service visit for the next day. When the repair technician did not appear, Plaintiff Perez called LG again and was told that the service visit was cancelled because LG had not yet sent the replacement parts to Plaintiff's home. Finally, on or around June 11, 2019, an LG repair technician replaced the compressor and other component parts in Plaintiff Perez's LG Refrigerator.

111.    During both service visits, the repair technicians stated that they had diagnosed the Compressor Defect in many LG refrigerators; that it is a known problem to the technicians; and that LG knows it is a defect.

112.    Plaintiff Perez has suffered an ascertainable loss due to LG's omissions and/or misrepresentations relating to the Compressor Defect. Had LG disclosed its knowledge of the Compressor Defect before Plaintiff Perez purchased her LG Refrigerator, she would have seen such disclosures and been aware of them. LG's omissions were material to Plaintiff, as she would not have purchased the LG Refrigerator or would not have paid the premium price that she paid for it, had she known it contained the Compressor Defect.

## CLASS ACTION ALLEGATIONS

113.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed classes defined below pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3):

> All individuals in the United States who purchased, other than for resale, an LG Refrigerator from LG or its authorized retailers between January 30, 2014 and the present (the "Nationwide Class").

> All residents of California who purchased, other than for resale, an LG Refrigerator from LG or its authorized retailers between January 30, 2014 and the present (the "California Class").

> All residents of Minnesota who purchased, other than for resale, an LG Refrigerator from LG or its authorized retailers between January 30, 2014 and the present (the "Minnesota Class").

> All residents of New Mexico who purchased, other than for resale, an LG Refrigerator from LG or its authorized retailers between January 30, 2014 and the present (the "New Mexico Class").

> All residents of New York who purchased, other than for resale, an LG Refrigerator from LG or its authorized retailers between January 30, 2014 and the present (the "New York Class").

114.    Excluded from the Classes defined above are: (a) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (b) any judges to whom this case is assigned and their staff. Plaintiffs

reserve the right to amend the Class definitions following discovery. The Nationwide Class, California Class, Minnesota Class, New Mexico Class, and New York Class are referred to collectively as the "Class."

115.   **Numerosity**: Although the exact number of Class members is uncertain, it can be ascertained through appropriate discovery, and the number is large enough (at least in the thousands) such that joinder is impracticable. The Class members are readily identifiable from information and records in LG's possession, custody, or control.

116.   **Typicality**: Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs, like all Class members, purchased a LG Refrigerator designed, manufactured, and distributed by LG, and equipped with the Defective Compressor. Plaintiffs, like all Class members, have been damaged by LG's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective components. Furthermore, the factual bases of LG's misconduct are common to all Class members and represent a common thread resulting in injury to the Class as a whole.

117.   **Commonality**: There are numerous questions of law and fact common to Plaintiffs and the Class members that predominate over any questions affecting only individual Class members. These common legal and factual issues include the following, without limitation:

(a)   whether LG misrepresented the quality of the LG Refrigerators;

(b)   whether the LG Refrigerators are defective due to the Compressor Defect;

(c)   whether LG failed to disclose the Compressor Defect to consumers;

(d)   whether LG breached express and implied warranties, including, without limitation, under the Magnuson-Moss Warranty Act ("MMWA");

(e)   whether LG's conduct resulted in unlawful common law fraud;

(f)     whether LG's conduct resulted in it receiving unjust enrichment at the expense of Plaintiffs and the Class;

(g)     as to the California Class, whether LG's conduct violated the California Consumer Legal Remedies Act;

(h)     as to the California Class, whether LG's conduct violated the California Unfair Competition Law;

(i)     as to the California Class, whether LG's conduct violated the California False Advertising Act;

(j)     as to the Minnesota Class, whether LG's conduct violated the Minnesota Prevention of Consumer Fraud Act;

(k)     as to the Minnesota Class, whether LG's conduct violated the Minnesota Deceptive Trade Practices Act;

(l)     as to the New Mexico Class, whether LG's conduct violated the New Mexico Unfair Trade Practices Act;

(m)     as to the New York Class, whether LG's conduct violated the New York Deceptive Acts and Practices Act;

(n)     as to the New York Class, whether LG's conduct violated the New York False Advertising Act;

(o)     whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief; and

(p)     whether Plaintiffs and the Class members are entitled to equitable or injunctive relief.

118.    **Adequate Representation**: Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

119.    **Predominance and Superiority**: As shown above, common issues predominate and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for LG's misconduct. Absent a class action, Class members will continue to incur damages, and LG's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

120.    In the alternative, this action is certifiable under the provisions of Fed. R. Civ. Proc. 23(b)(1) and/or (b)(2) because: (a) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for LG; and (b) the prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) LG has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

121.   Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## TOLLING OF THE STATUTES OF LIMITATIONS

122.   Because the defect is undetectable until it manifests and LG failed to disclose and/or intentionally concealed the Compressor Defect, Plaintiffs and Class members were not reasonably able to discover the problem until after purchasing the LG Refrigerators, despite exercise of due diligence.

123.   Additionally, LG instructed its authorized employees and technicians to inform Class members that the manifestations of the Compressor Defect were not a defect as alleged herein, or to omit this fact.

124.   Plaintiffs and the Class members had no realistic ability to discern that the LG Linear Compressor in LG Refrigerators were defective. Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the Class.

125.   LG has known of the Compressor Defect and has actively concealed from or failed to alert owners of the LG Refrigerators of the defective nature of the LG Linear Compressor.

126.   Any applicable statute of limitations has therefore been tolled by LG's knowledge, active concealment, and denial of the facts alleged herein. Defendant is further estopped from relying on any statute of limitations because of its concealment of the Compressor Defect.

## COUNT I
### Breach of Express Warranty
### (On Behalf of Plaintiffs and the Class)

127.   Plaintiffs incorporate by reference and re-allege each preceding and succeeding paragraph as though fully set forth herein.

128.   Plaintiffs bring this claim individually and on behalf of all Nationwide Class members.

129.   Rex Tabora brings this claim on behalf of the California Class, Bernie Hmurovich and Sarah Johnson bring this claim on behalf of the Minnesota Class, Lenny Martinez brings this claim on behalf of the New Mexico Class, and Eva Perez brings this claim on behalf of the New York Class under CAL. COM. CODE. § 2313; MINN. STAT. § 336.2-313; N.M. STAT. ANN. § 55-2-313; and N.Y. U.C.C. Law § 2-313, respectively.

130.   LG is and was at all relevant times a "merchant" as defined by the Uniform Commercial Code ("UCC") and by the respective state statutes under which Plaintiffs assert this claim.

131.   The LG Refrigerators are and were at all relevant times "goods" as defined by the UCC and by the respective state statutes under which Plaintiffs assert this claim.

132.   LG provided all purchasers of the LG Refrigerators with the express warranties described in this Complaint, which became a material part of the bargain.

133.    Under LG's warranty, LG expressly warranted that "[s]hould [an] LG Refrigerator ("Product") fail due to a defect in materials or workmanship under normal home use, during the warranty period . . . , LG will at its option repair or replace the product." Before January 1, 2018, LG expressly agreed to cover the repair or replacement cost:

(a)   for the refrigerator, all "parts and labor (internal/functional parts only)" for up to one year after the date of purchase;

(b)   for the sealed system (including the condenser, dryer, connecting tube, refrigerant, and evaporator), all parts and labor for up to one year after the date of purchase; after which all parts, but not labor, would be covered for the remaining six years after the date of purchase; and

(c)   for the linear compressor, all parts for up to ten years after the date of purchase.

134.   Effective January 1, 2018, LG revised its warranty coverage periods on all its refrigerators regardless of purchase date, agreeing to cover costs of repair or replacement, for components related to the sealed system (including the compressor, evaporator, condenser, dryer, and connection tube), all parts and labor for up to five years after the date of purchase. After the expiration of the initial five-year warranty period, LG agreed to cover costs of repair or replacement for parts only, but not labor, for components related to the compressor for up to ten years after the date of purchase.

135.   The Compressor Defect was present at the time the LG Refrigerators were sold to Plaintiffs and Class members.

136.   Plaintiffs relied on LG's express warranty, which were a material part of the bargain, when purchasing their LG Refrigerators.

137.   Under LG's express warranty, LG was obligated to correct the Compressor Defect in the LG Refrigerators.

138.    Although LG was obligated to correct the Compressor Defect, none of the attempted fixes to the LG Refrigerators are adequate under the terms of LG's express warranty, as they did not cure the defect.

139.    LG breached its warranty by selling LG Refrigerators with the Compressor Defect to Plaintiffs and Class members despite LG's knowledge that such defect existed in the refrigerators at the time of sale, that the defect causes the refrigerators to fail and/or cease to function properly within and just outside of the warranty period, and that the defect causes the refrigerators to fail prematurely and well before the expiration of the refrigerators' useful life.

140.    LG breached its warranty by failing to adequately repair or replace components that were damaged or failing due to the Compressor Defect when such failures occurred during the warranty period. Specifically, LG's breaches include, but are not limited to:

(a)    unnecessarily delaying actual repair by, *inter alia*, (i) requiring Plaintiffs and Class members to first perform ineffective troubleshooting procedures, at times causing them to incur out-of-pocket expenses; (ii) misleadingly informing Plaintiffs and Class members that they, the consumers, must first order the replacement parts; (iii) merely referring Plaintiffs and Class members to local repair technicians authorized to make the repairs, many of whom cannot or refuse to work on LG refrigerators; (iv) instructing its repair technicians to not bring replacement parts to initial service visits where the technicians are only permitted to diagnose, but not repair; (v) refusing to accept repair technicians' initial diagnoses as a compressor failure, instead requiring technicians to first replace other parts; (vi) informing Plaintiffs and Class members that service visits will be scheduled or that reimbursement/repair requests will be processed within a number of days, yet failing to do so; and/or (vii) failing to respond in a reasonable amount of time to requests for repair by Plaintiffs and Class members;

(b)     misleadingly informing Plaintiffs and Class members that they will be responsible for the costs of parts and/or labor that are actually covered by LG's express warranty or failing to reimburse Plaintiffs and Class members for such costs; and/or

(c)     replacing defective components with equally defective components, which result in subsequent failures, additional service visits, and additional costs to consumers, without actually repairing the LG Refrigerators.

141.    Accordingly, the limited remedy of repair or replacement in LG's express warranty is an inadequate remedy such that the warranty fails of its essential purpose, rendering the warranty null and void.

142.    Moreover, LG's attempt to disclaim or limit its express warranty vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, LG's warranty limitation is unenforceable because it knowingly sold LG Refrigerators containing a uniform Compressor Defect that would cause the refrigerators to prematurely fail. Despite this knowledge, LG failed to inform Plaintiffs and Class members of the defect and misrepresented the reliability, quality, performance, and qualities of the LG Refrigerators. The limited remedies in LG's warranty unreasonably favor LG and fail the reasonable expectations of Plaintiffs and Class members regarding the LG Refrigerators' performance.

143.    The time limits contained in LG's warranty period are also unconscionable and inadequate to protect Plaintiffs and Class members. Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored LG. A gross disparity in bargaining power existed between LG and Class members, and LG knew that the LG Refrigerators were defective at the time of sale and that such defect would cause premature failure.

144.    Any purported warranty limitations excluding or limiting (a) labor and costs of labor and (b) incidental and consequential damages, are also procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302 and the applicable state statutes under which Plaintiffs assert their claims.

145.    Plaintiffs and Class members have complied with all obligations under the express warranty, or otherwise have been excused from performance of said obligations as a result of LG's conduct described herein.

146.    Plaintiffs and Class members were not required to notify LG of the breach because affording LG a reasonable opportunity to cure its breach of written warranty would have been futile. LG was also on notice of the Compressor Defect from the complaints and service requests it received from Plaintiffs and Class members, from repairs and/or replacements of the Linear Compressors or components thereof, and through other internal and external sources.

147.    Because LG, through its conduct, has covered repairs of the Compressor Defect if LG determines the repairs are appropriately covered under its express warranty, LG cannot now deny that its express warranty covers the Compressor Defect.

148.    LG created additional express warranties for the LG Refrigerators through its advertisements, sales brochures, marketing materials, catalogs, website and press releases.  These warranties have full force and effect, notwithstanding any limitations in the formal, written express warranty provided by LG.

149.    LG made the express warranties to the ultimate consumers, such as Plaintiffs and the Class, and Plaintiffs and the Class relied upon them.  Yet, the LG Refrigerators did not performed as represented and promised.

150.     As a direct and proximate cause of LG's breaches, Plaintiffs and Class members suffered and will continue to suffer damages, injury in fact, and ascertainable loss, including economic damages at the point of sale of their LG Refrigerators (by paying more than what the LG Refrigerators were worth), repair and replacement costs, monetary losses associated with food spoliation, damage to other property, and loss of use of or access to a refrigerator for daily needs.

151.     LG's breaches of its express warranties damaged Plaintiffs and Class members in an amount to be determined at trial.

### COUNT II
### Breach of the Implied Warranty of Merchantability
### (On Behalf of Plaintiffs and the Class)

152.     Plaintiffs incorporate by reference and re-allege each preceding and succeeding paragraph as though fully set forth herein.

153.     Plaintiffs bring this claim individually and on behalf of all Class members.

154.     Rex Tabora brings this claim on behalf of the California Class, Bernie Hmurovich and Sarah Johnson bring this claim on behalf of the Minnesota Class, Lenny Martinez brings this claim on behalf of the New Mexico Class, and Eva Perez brings this claim on behalf of the New York Class under CAL. COM. CODE. § 2314; MINN. STAT. § 336.2-314; N.M. STAT. ANN. § 55-2-314; and N.Y. U.C.C. Law § 2-314, respectively.

155.     LG is and was at all relevant times a "merchant" as defined by the Uniform Commercial Code ("UCC") and by the respective state statutes under which Plaintiffs alternatively assert this claim.

156.     The LG Refrigerators are and were at all relevant times "goods" as defined by the UCC and by the respective state statutes under which Plaintiffs alternatively assert this claim.

157.    LG impliedly warranted that the LG Refrigerators were of a merchantable quality and fit for their ordinary and intended use of cooling food and beverages.

158.    LG knew the specific use for which the LG Refrigerators were purchased. LG directly sold and marketed refrigerators containing Linear Compressors to customers through authorized retailers such as those from whom Plaintiffs and Class members bought their LG Refrigerators, for the intended purpose of consumers purchasing the refrigerators. LG knew that the LG Refrigerators would and did pass unchanged from the authorized retailers to Plaintiffs and Class members, with no modification to the Defective Compressors.

159.    The LG Refrigerators contained an unseen Compressor Defect when the refrigerators left LG's possession and at the time of sale. The defect renders the LG Refrigerators inoperable during their useful lives and unfit for their ordinary and intended purpose. At all relevant times, including when the LG Refrigerators entered the stream of commerce and were purchased by Plaintiffs and Class members, the LG Refrigerators were defective and substantially certain to fail.

160.    As set forth in more detail above, LG has been long aware of the Compressor Defect and that it was manifest in the LG Refrigerators before they were purchased.

161.    Plaintiffs and Class members were in privity of contract with LG by virtue of their interactions with LG. Alternatively, privity of contract need not be established, and is not required, because Plaintiffs and Class members are the intended third-party beneficiaries of the implied warranties and other contracts between LG and retailers who sold the LG Refrigerators. LG's warranties were designed and intended for the benefit of consumers who purchased LG Refrigerators.

162.    Plaintiffs provided LG with an opportunity to cure its breaches of warranties, to no avail. LG has refused to recall, adequately repair, replace, or refund the purchase price of failed LG Refrigerators.

163.    Any attempt to disclaim or limit the implied warranty is unconscionable and inappropriate under the circumstances here. LG knowingly sold LG Refrigerators containing a uniform Compressor Defect that would cause the refrigerators to prematurely fail. Despite this knowledge, LG failed to inform Plaintiffs and Class members of the defect and misrepresented the reliability, quality, performance, and qualities of the LG Refrigerators. The limited remedies offered in LG's warranty unreasonably favor LG and fail the reasonable expectations of Plaintiffs and Class members regarding the LG Refrigerators' performance.

164.    The time limits contained in LG's warranty period are also unconscionable and inadequate to protect Plaintiffs and Class members. Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored LG. A gross disparity in bargaining power existed between LG and Class members, and LG knew that the LG Refrigerators were defective at the time of sale and that such defect would cause premature failure.

165.    Plaintiffs and Class members have complied with all obligations under the implied warranty of merchantability or otherwise have been excused from performance of said obligations as a result of LG's conduct described herein.

166.    Plaintiffs and Class members were not required to notify LG of the breach because affording LG a reasonable opportunity to cure its breach of warranty would have been futile. LG was also on notice of the Compressor Defect from the complaints and service requests it received

48

from Plaintiffs and Class members, from repairs and/or replacements of the Linear Compressors or components thereof, and through other internal and external sources.

167.    As a direct and proximate cause of LG's breaches, Plaintiffs and Class members suffered and will continue to suffer damages, injury in fact, and ascertainable loss, including economic damages at the point of sale of their LG Refrigerators, repair and replacement costs, monetary losses associated with food spoliation, damage to other property, and loss of use of or access to a refrigerator for daily needs.

168.    LG's breaches of the implied warranty of merchantability damaged Plaintiffs and Class members in an amount to be determined at trial.

**COUNT III**
**Breach of Warranty Under the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2303 *et seq.***
**(On Behalf of Plaintiffs and the Class)**

169.    Plaintiffs incorporate by reference and re-allege each preceding and succeeding paragraph as though fully set forth herein.

170.    Plaintiffs bring this claim individually and on behalf of all Class members.

171.    The LG Refrigerators are a "consumer product" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

172.    Plaintiffs and Class members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

173.    LG is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

174.    LG's express warranty is a "written warranty" within the meaning of the MMWA, 15 U.S.C. § 2301(6). The LG Refrigerators' implied warranties are accounted for under the

MMWA, 15 U.S.C. § 2301(7), which warranties LG cannot disclaim when it fails to provide merchantable goods.

175.    Section 2310(d) of the MMWA provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

176.    Section 2304(d) of the MMWA also provides:

> [T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor.

177.    The LG Refrigerators share a common and uniform defect, the Compressor Defect, which renders the compressors in the LG Refrigerators prone to inevitable failure, and incapable of being repaired.

178.    Despite demands by Plaintiffs and Class members for LG to pay the expenses associated with diagnosing and repairing the Compressor Defect, LG has refused to do so.

179.    LG provided all purchasers of the LG Refrigerators with the express warranty described herein, which became a material part of the bargain.

180.    Specifically, LG expressly warranted that "[s]hould [an] LG Refrigerator ("Product") fail due to a defect in materials or workmanship under normal home use, during the warranty period . . . , LG will at its option repair or replace the product." Moreover, as of January 1, 2018, LG agreed to cover the cost of labor and replacement parts for the compressor, evaporator, condense, drier, and connection tube of cooling (sealed) systems in all LG refrigerators that failed due to a defect within five years from the date of purchase. In explaining its new warranty

coverage, LG specifically stated, "For example, if it is now June 1, 2019, and you purchased your refrigerator on June 2, 2014, your refrigerator will be repaired as to the Cooling System with no cost to you whatsoever, parts or labor!"[18]

181.   LG breached the express warranty by its conduct as alleged throughout the Complaint and specifically detailed above.

182.   Furthermore, LG impliedly warranted that the LG Refrigerators were free from defects, of merchantable quality, and fit for the ordinary purposes for which refrigerators are used.

183.   Contrary to the applicable implied warranties, the LG Refrigerators and their compressors at the time of sale and thereafter were not fit for their ordinary and intended purposes of keeping food and beverages cool and frozen. Instead, the LG Refrigerators are defective, including, but not limited to, the defective design and/or manufacture of their compressors.

184.   LG's breach of express and implied warranties has deprived Plaintiffs and Class members of the benefit of their bargain.

185.   LG's durational limitation on its express or implied warranties is unconscionable and unenforceable under the factual circumstances here. Specifically, any durational limitation is unenforceable because Plaintiffs and the Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored LG. A gross disparity in bargaining power existed between LG and the Class members, and LG knowingly sold a defective product without informing consumers about the defect.

186.   The amount in controversy of the individual claims of each Plaintiff and Class member meets or exceeds the sum or value of $25. In addition, the amount in controversy meets

---

[18] "Important LG Refrigerator Warranty Information Announcement, Please Read." March 18, 2019, available at: https://lgcommunity.us.com/discussion/3871/important-lg-refrigerator-warranty-information-announcement-please-read (last accessed July 3, 2019).

or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

187.    LG has been afforded a reasonable opportunity to cure its breaches. LG had actual knowledge and ample notice of the defective nature of the LG Refrigerators, including but not limited to instances when Plaintiffs and Class members notified LG and its agents of the complete failures of their LG Refrigerators and requested repairs.

188.    As a direct and proximate cause of LG's breach of express and implied warranties, Plaintiffs and Class members sustained damages and other losses in an amount to be determined at trial.

189.    Plaintiffs and Class members are entitled to recover damages as a result of LG's breach of warranties. Plaintiffs and Class members are also entitled to seek costs and expenses, including attorneys' fees under the MMWA. 15 U.S.C. § 2310(d)(2).

### COUNT IV
### Violation of the Consumer Legal Remedies Act
### Cal. Civ. Code. §§ 1750, *et seq.*
### (On Behalf of Plaintiff Rex Tabora
### and the California Class)

190.    Plaintiff Rex Tabora incorporates by reference and re-alleges each preceding and succeeding paragraph as though fully set forth herein.

191.    Plaintiff Tabora brings this cause of action individually and on behalf of the California Class.

192.    Plaintiff Tabora and the California Class members are "consumers" within the meaning of the California Legal Remedies Act ("CLRA"), who purchased LG Refrigerators. Cal. Civ. Code § 1761(d).

193.    LG is a "person" under Cal. Civ. Code § 1761(c).

194.     The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" CAL. CIV. CODE § 1770(a).

195.     LG engaged in unfair or deceptive trade practices in connection with the sale of the LG Refrigerators by, *inter alia*, marketing and representing that the LG Refrigerators are fit for their ordinary and intended purposes of keeping food and beverages cool and frozen, reliable, durable, energy-efficient, and of high quality. As such, LG systematically misrepresented, concealed, suppressed, or omitted material facts relating to the LG Refrigerators and Compressor Defect in the course of its business, with the intent that consumers would rely upon such misrepresentation, concealment, suppression, or omission.

196.     LG's conduct, as described herein, was and is in violation of the CLRA.  LG's conduct violates at least the following enumerated CLRA provisions:

(a)     CAL. CIV. CODE § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

(b)     CAL. CIV. CODE § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

(c)     CAL. CIV. CODE § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

(d)     CAL. CIV. CODE § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

197.     LG's deceptive acts or practices occurred repeatedly in LG's trade or business and were capable of deceiving a substantial portion of the purchasing public.

198.    LG knew that the LG Refrigerators and their compressors suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

199.    LG owed a duty to disclose that the LG Refrigerators are defective because it had superior knowledge of the compressor defect.

200.    LG also owed a duty to disclose that the LG Refrigerators are defective because it made partial, materially misleading statements concerning the LG Refrigerators' high-quality, reliable, and durable features, including the linear compressor, without disclosing that the linear compressor and related parts are defective.

201.    LG's conduct violated the CLRA, CAL. CIV. CODE. §§ 1750, *et seq*., which LG knew or should have known.

202.    Plaintiff Tabora and the California Class members reasonably relied on LG's misrepresentations and omissions of material facts in its advertisements of the LG Refrigerators and in the purchase of the LG Refrigerators.

203.    Had Plaintiff Tabora and the California Class members known that the LG Refrigerators would exhibit the Compressor Defect, they would not have purchased the LG Refrigerators. Any reasonable consumer would have considered the Compressor Defect to be materially important in deciding whether to purchase an LG Refrigerator. Plaintiffs did not receive the benefit of their bargain as a result of LG's misconduct.

204.    Plaintiff Tabora and the California Class members were harmed and suffered injury in fact and/or ascertainable loss and actual damages as a result of LG's false advertising with regard to their LG Refrigerators' compressors in that they purchased refrigerators which do not perform as advertised; they overpaid for their LG Refrigerators; they lost spoiled food and beverages; and they incurred costs for repairs, rental refrigerators, and/or new refrigerators.

205.    Plaintiff and the other California Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

206.    Under CAL. CIV. CODE § 1780(a), Plaintiff Tabora and the California Class seek monetary relief against LG for their damages caused by LG's violations of the CLRA as alleged herein.

207.    Under CAL. CIV. CODE § 1780(b), Plaintiffs seek an additional award against LG of up to $5,000 for each California Class member who qualifies as a "senior citizen" or "disabled person" under the CLRA. Defendants knew or should have known that their conduct was directed to one or more California Class members who are senior citizens or disabled persons. Defendants' conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.

208.    One or more California Class members who are senior citizens or disabled persons are substantially more vulnerable to LG's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from LG's conduct.

209.    Plaintiff Tabora and the California Class further seek an order enjoining LG's unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under CAL. CIV. CODE § 1780(e), and any other just and proper relief available under the CLRA.

210.    On July 19, 2019, Plaintiff Tabora provided LG with notice of its violations of the CLRA pursuant to CAL. CIV. CODE § 1782(a). If, within 30 days of such notice, LG fails to provide appropriate relief for their violations of the CLRA, Plaintiffs may amend this Complaint as appropriate under the CLRA.

**COUNT V**
**Violation of the California Unfair Competition Law**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq.***
**(On Behalf of Plaintiff Rex Tabora**
**and the California Class)**

211.    Plaintiff Rex Tabora incorporates by reference and re-alleges each preceding and succeeding paragraph as though fully set forth herein.

212.    Plaintiff Tabora brings this cause of action individually and on behalf of the California Class.

213.    The California Unfair Competition Law ("CUCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

214.    LG engaged in unlawful, unfair, or fraudulent business acts or practices in connection with the sale of the LG Refrigerators by, *inter alia*, marketing and representing that the LG Refrigerators are fit for their ordinary and intended purposes of keeping food and beverages cool and frozen, reliable, durable, energy-efficient, and of high quality. LG systematically misrepresented, concealed, suppressed, or omitted material facts relating to the LG Refrigerators and Compressor Defect in the course of its business, with the intent that consumers would rely upon such misrepresentation, concealment, suppression, or omission.

215.    Such conduct by LG constituted unlawful, unfair, or fraudulent business acts or practices in that LG used deceptive representations in connection with goods; represented that goods have sponsorship, approval, characteristics, uses that they do not have; represented that goods are of a particular standard, quality, or grade when they are of another; and advertised goods with intent not to sell them as advertised.

216.    LG's misrepresentations and omissions of material facts alleged herein caused Plaintiff Tabora and the California Class to purchase their LG Refrigerators. Had Plaintiff Tabora and the California Class members known that the LG Refrigerators would exhibit the Compressor Defect, they would not have purchased the LG Refrigerators. Any reasonable consumer would have considered the Compressor Defect to be materially important in deciding whether to purchase an LG Refrigerator.

217.    Plaintiff Tabora and the California Class members were harmed and suffered injury in fact and/or ascertainable loss and actual damages as a result of LG's unlawful, unfair, and/or fraudulent acts or practices with regard to their LG Refrigerators' compressors in that they purchased refrigerators which do not perform as advertised; they overpaid for their LG Refrigerators; they lost spoiled food and beverages; and they incurred costs for repairs, rental refrigerators, and/or new refrigerators.

218.    Plaintiff Tabora and the California Class members seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant under CAL. BUS. & PROF. CODE § 17200.

219.    Plaintiff Tabora and the California Class members requests that this Court enter such orders or judgments as may be necessary to enjoin LG from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, and other appropriate relief under the CUCL, CAL. BUS. & PROF. CODE § 17203 and CAL. BUS. & PROF. CODE § 3345.

**COUNT VI**
**Violation of the California False Advertising Act**
**CAL. BUS. & PROF. CODE. §§ 17500, *et seq.***
**(On Behalf of Plaintiff Rex Tabora**
**and the California Class)**

220.     Plaintiff Rex Tabora incorporates by reference and re-alleges each preceding and

succeeding paragraph as though fully set forth herein.

221.     Plaintiff Tabora brings this cause of action individually and on behalf of the

California Class.

222.     The California False Advertising Act ("CFAA") provides:

> It is unlawful for any … corporation … with intent directly or
> indirectly to dispose of real or personal property … to induce the
> public to enter into any obligation relating thereto, to make or
> disseminate or cause to be made or disseminated before the public
> in this state… in any newspaper or other publication, or any
> advertising device, … or in any other manner or means whatever,
> including over the Internet, any statement, concerning that real or
> personal property … which is untrue or misleading, and which is
> known, or which by the exercise of reasonable care should be
> known, to be untrue or misleading.

Cal. Bus. & Prof. Code. § 17500.

223.     LG caused to be made or disseminated through California and the United States,

through advertising, marketing, and other publications, statements and omissions that were untrue

or misleading, and that were known by LG, or that through the exercise of reasonable care should

have been known by LG, to be untrue and misleading to Plaintiff Tabora and the California  Class.

224.     LG made numerous material misrepresentations and omissions of fact with intent

to mislead and deceive concerning the LG Refrigerators, particularly concerning the reliability,

durability, energy-efficiency, long-term performance, high quality and advanced technological

nature of the LG Refrigerators. Moreover, LG's misrepresentations and omissions concealed that

the LG Refrigerators would not fulfill their ordinary and intended purposes of keeping food and

beverages cool and frozen over the lifespan of an average, lower-priced refrigerator. As such, LG systematically misrepresented, concealed, suppressed, or omitted material facts relating to the LG Refrigerators and Compressor Defect in the course of its business, with the intent that consumers would rely upon such misrepresentation, concealment, suppression, or omission.

225.    LG's false advertising was likely to and did in fact deceive reasonable consumers, including Plaintiff Tabora and the California Class members, about the defective and true characteristics of LG Refrigerators and Compressor Defect, the quality of the LG brand, and the true value of the LG Refrigerators.

226.    Such conduct and LG's conduct alleged throughout this complaint violated the CFAA, CAL. BUS. & PROF. CODE. § 17500.  LG's conduct as alleged herein occurred in the conduct of LG's trade or commerce and is part of a pattern or generalized course of conduct that continues in California and nationwide.

227.    The LG Refrigerators do not perform as advertised, making them far less valuable than advertised.

228.    Plaintiff Tabora and the California Class members reasonably relied on LG's material misrepresentations and omissions of material facts in its advertisements of the LG Refrigerators and in the purchase of the LG Refrigerators.

229.    Plaintiff Tabora and the California Class members would not have purchased the LG Refrigerators but for LG's false advertising, because knowing that LG Refrigerators would exhibit the Compressor Defect would have prevented Plaintiff from purchasing the refrigerators. Any reasonable consumer would have considered the Compressor Defect to be materially important in deciding whether to purchase an LG Refrigerator. Plaintiffs did not receive the benefit of their bargain as a result of LG's misconduct.

230.    Plaintiff Tabora and the California Class members were harmed and suffered injury in fact and/or ascertainable loss and actual damages as a result of LG's false advertising with regard to their LG Refrigerators' compressors in that they purchased refrigerators which do not perform as advertised; they overpaid for their LG Refrigerators; they lost spoiled food and beverages; and they incurred costs for repairs, rental refrigerators, and/or new refrigerators.

231.    Plaintiff Tabora and the California Class members are entitled to actual damages and/or equitable relief, injunctive relief, attorneys' fees, costs, and other appropriate relief under the CFAA, in an amount to be proven at trial.

**COUNT VII**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**MINN. STAT. §§ 325f.68, *et seq.***
**(On Behalf of Plaintiffs Bernie Hmurovich and Sarah Johnson**
**and the Minnesota Class)**

232.    Plaintiffs Bernie Hmurovich and Sarah Johnson incorporate by reference and re-allege each preceding and succeeding paragraph as though fully set forth herein.

233.    Plaintiffs Bernie Hmurovich and Sarah Johnson bring this cause of action individually and on behalf of the Minnesota Class.

234.    The LG Refrigerators are "merchandise" within the meaning of the Minnesota Prevention of Consumer Fraud Act ("MNCFA"), MINN. STAT. § 325F.68(2).

235.    The MNCFA prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby …." MINN. STAT. § 325F.69(1).

236.    LG engaged in unfair and deceptive trade practices in connection with the sale of the LG Refrigerators, a consumer transaction under MNCFA by, *inter alia*, marketing and

representing that the LG Refrigerator are fit for their ordinary and intended purposes of keeping food and beverages cool and frozen, reliable, durable, energy-efficient, and of high quality. As such, LG systematically misrepresented, concealed, suppressed, or omitted material facts relating to the LG Refrigerators and Compressor Defect in the course of its business, with the intent that consumers would rely upon such misrepresentation, concealment, suppression, or omission.

237.    Such conduct by LG constituted unfair and deceptive practices under MINN. STAT. § 325F.69, subd. 1. LG represented that the LG Refrigerators have characteristics, uses, benefits, and qualities which they do not have; represented that the LG Refrigerators are of a particular standard and quality when they are not; marketed and advertised the LG Refrigerators with the intent to not sell them as advertised; and otherwise engaged in conduct likely to deceive.

238.    LG's unfair and deceptive acts or practices occurred repeatedly in LG's trade or business and were capable of deceiving a substantial portion of the purchasing public.

239.    LG knew that the LG Refrigerators and their compressors suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

240.    LG's conduct violated the MNCFA, MINN. STAT. §§ 325f.68, *et seq.*, which LG knew or should have known.

241.    Plaintiffs and the Minnesota Class members reasonably relied on LG's misrepresentations and omissions of material facts in its marketing materials and advertisements of the LG Refrigerators and in the purchase of the LG Refrigerators.

242.    Had Plaintiffs and the Minnesota Class members known that the LG Refrigerators would exhibit the Compressor Defect, they would not have purchased the LG Refrigerators. Any reasonable consumer would have considered the Compressor Defect to be important in deciding

whether to purchase an LG Refrigerator. Plaintiffs and the Minnesota Class did not receive the benefit of their bargain as a result of LG's misconduct.

243.    Plaintiffs and the Minnesota Class members suffered injury in fact to a legally protected interest. As a result of LG's conduct, Plaintiffs and the Minnesota Class members were harmed and suffered actual damages.

244.    Plaintiffs and the Minnesota Class members were harmed and suffered actual damages as a result of LG's misrepresentations and omissions with regard to their LG Refrigerators' compressors because they purchased refrigerators which do not perform as advertised.

245.    As a direct and proximate result of LG's deceptive, misleading, unfair, and unconscionable practices, Plaintiffs and the Minnesota Class members are entitled to rescission of the consumer transactions, actual damages, compensatory damages, injunctive and equitable relief, penalties, attorneys' fees, costs, and other appropriate relief as provided under the MNCFA, MINN. STAT. § 8.31(3a), in an amount to be proven at trial.

246.    Plaintiffs and the Minnesota Class members also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that LG's acts show deliberate disregard for the rights or safety of others.

**COUNT VIII**
**Violation of the Minnesota Uniform Deceptive Trade Practices Act**
**MINN. STAT. §§ 325d.43-48, *et seq.***
**(On Behalf of Plaintiffs Bernie Hmurovich and Sarah Johnson**
**and the Minnesota Class)**

247.    Plaintiffs Bernie Hmurovich and Sarah Johnson incorporate by reference and re-allege each preceding and succeeding paragraph as though fully set forth herein.

248.    Plaintiffs Bernie Hmurovich and Sarah Johnson bring this cause of action individually and on behalf of the Minnesota Class.

249.    The Minnesota Uniform Deceptive Trade Practices Act ("MNDTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) advertises goods or services with intent not to sell them as advertised." MINN. STAT. § 325D.44.

250.    LG engaged in deceptive trade practices in connection with the sale of the LG Refrigerators by, *inter alia*, marketing and representing that the LG Refrigerators are fit for their ordinary and intended purposes of keeping food and beverages cool and frozen, reliable, durable, energy-efficient, and of high quality. As such, LG systematically misrepresented, concealed, suppressed, or omitted material facts relating to the LG Refrigerators and Compressor Defect in the course of its business, with the intent that consumers would rely upon such misrepresentation, concealment, suppression, or omission.

251.    Such conduct by LG constituted unfair and deceptive trade practices in that LG used deceptive representations in connection with goods; represented that goods have sponsorship, approval, characteristics, uses that they do not have; represented that goods are of a particular standard, quality, or grade when they are of another; and advertised goods with intent not to sell them as advertised.

252.    LG's deceptive acts or practices occurred repeatedly in LG's trade or business and were capable of deceiving a substantial portion of the purchasing public.

253.    LG knew that the LG Refrigerators and their compressors suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

254.    LG's conduct violated the MNDTPA, MINN. STAT. §§ 325d.43, *et seq*., which LG knew or should have known.

255.    Plaintiffs and the Minnesota Class members reasonably relied on LG's misrepresentations and omissions of material facts in its advertisements of the LG Refrigerators and in the purchase of the LG Refrigerators.

256.    Had Plaintiffs and the Minnesota Class members known that the LG Refrigerators would exhibit the Compressor Defect, they would not have purchased the LG Refrigerators. Any reasonable consumer would have considered the Compressor Defect to be materially important in deciding whether to purchase an LG Refrigerator. Plaintiffs did not receive the benefit of their bargain as a result of LG's misconduct.

257.    Plaintiffs and the Minnesota Class members suffered injuries in fact to a legally protected interest.

258.    Plaintiffs and the Minnesota Class members were harmed and suffered actual damages as a result of LG's misrepresentations and omissions with regard to their LG Refrigerators' compressors because they purchased refrigerators which do not perform as advertised.

259.    Plaintiffs and the Minnesota Class members are entitled to actual damages and/or equitable relief, injunctive relief, attorneys' fees, costs, and other appropriate relief under the MNDTPA, MINN. STAT. §§ 8.31(3a) and 325D.45, in an amount to be proven at trial.

260.     Plaintiffs and the Minnesota Class members also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that LG's acts show deliberate disregard for the rights or safety of others.

### COUNT IX
### Violation of the New Mexico Uniform Deceptive Trade Practices Act
### N.M. STAT. ANN. §§ 57-12-1, *et seq.*
### (On Behalf of Plaintiff Lenny Martinez and the New Mexico Class)

261.     Plaintiff Lenny Martinez incorporates by reference and re-alleges each preceding and succeeding paragraph as though fully set forth herein.

262.     Plaintiff Martinez brings this cause of action individually and on behalf of the New Mexico Class.

263.     Plaintiff Martinez, the New Mexico Class members, and LG are "person[s]" within the meaning of the New Mexico Unfair Trade Practices Act ("NMUTPA"), N.M. STAT. ANN. § 57-12-2.

264.     LG's conduct as alleged herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2.

265.     The NMUTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. STAT. ANN. § 57-12-2(D).

266.     LG engaged in deceptive trade practices in connection with the sale of the LG Refrigerators by, *inter alia*, marketing and representing that the LG Refrigerators are fit for their ordinary and intended purposes of keeping food and beverages cool and frozen, reliable, durable,

energy-efficient, and of high quality. As such, LG systematically misrepresented, concealed, suppressed, or omitted material facts relating to the LG Refrigerators and Compressor Defect in the course of its business, with the intent that consumers would rely upon such misrepresentation, concealment, suppression, or omission.

267.   Such conduct by LG constituted unfair and deceptive trade practices in that LG used deceptive representations in connection with goods; represented that goods have sponsorship, approval, characteristics, uses that they do not have; represented that goods are of a particular standard, quality, or grade when they are of another; and advertised goods with intent not to sell them as advertised.

268.   LG's deceptive acts or practices occurred repeatedly in LG's trade or business and were capable of deceiving a substantial portion of the purchasing public.

269.   LG knew that the LG Refrigerators and their compressors suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

270.   LG's acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. STAT. ANN. § 57-12-2(D). In addition, LG's actions constitute unconscionable actions under N.M. STAT. ANN. § 57-12-2(E), since they took advantage of the lack of knowledge, ability, experience, and capacity of Plaintiff Martinez and the New Mexico Class members to a grossly unfair degree. LG knew or should have known such conduct violated the NMUTPA.

271.   Plaintiff Martinez and the New Mexico Class members reasonably relied on LG's misrepresentations and omissions of material facts in its advertisements of the LG Refrigerators and in the purchase of the LG Refrigerators.

272.     Had Plaintiff Martinez and the New Mexico Class members known that the LG Refrigerators would exhibit the Compressor Defect, they would not have purchased the LG Refrigerators. Any reasonable consumer would have considered the Compressor Defect to be materially important in deciding whether to purchase an LG Refrigerator. Plaintiffs did not receive the benefit of their bargain as a result of LG's misconduct.

273.     Plaintiff Martinez and the New Mexico Class members suffered injuries in fact to a legally protected interest.

274.     Plaintiff Martinez and the New Mexico Class members were harmed and suffered actual damages as a result of LG's misrepresentations and omissions with regard to their LG Refrigerators' compressors because they purchased refrigerators which do not perform as advertised.

275.     Plaintiff Martinez and the New Mexico Class members are entitled to actual damages and/or equitable relief, discretionary treble damages, injunctive relief, attorneys' fees, costs, and other appropriate relief under the NMUTPA, N.M. STAT. ANN. § 57-12-10, in an amount to be proven at trial.

276.     Plaintiff Martinez and the New Mexico Class members also seek punitive damages because LG's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

**COUNT X**
**Violation of the New York Deceptive Acts and Practices Act**
**N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiff Eva Perez and the New York Class)**

277.     Plaintiff Eva Perez incorporates by reference and re-alleges each preceding and succeeding paragraph as though fully set forth herein.

278.     Plaintiff Perez brings this cause of action individually and on behalf of the New York Class.

67

279.     Plaintiff Perez and the New York Class members are "person[s]" within the meaning of the New York Deceptive Acts and Practices Act ("NYDAPA"), N.Y. Gen. Bus. Law § 349(h).

280.     The NYDAPA prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

281.     LG engaged in deceptive trade practices in connection with the sale of the LG Refrigerators by, *inter alia*, marketing and representing that the LG Refrigerators are fit for their ordinary and intended purposes of keeping food and beverages cool and frozen, reliable, durable, energy-efficient, and of high quality. As such, LG systematically misrepresented, concealed, suppressed, or omitted material facts relating to the LG Refrigerators and Compressor Defect in the course of its business, with the intent that consumers would rely upon such misrepresentation, concealment, suppression, or omission.

282.     Such conduct by LG constituted unfair and deceptive trade practices in that LG used deceptive representations in connection with goods; represented that goods have sponsorship, approval, characteristics, uses that they do not have; represented that goods are of a particular standard, quality, or grade when they are of another; and advertised goods with intent not to sell them as advertised.

283.     LG's deceptive acts or practices occurred repeatedly in LG's business, trade or commerce and were capable of deceiving a substantial portion of the purchasing public.

284.     LG knew that the LG Refrigerators and their compressors suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

285.     LG's acts and omissions LG's conduct violated the NYDAPA, N.Y. Gen. Bus. Law § 349, which LG knew or should have known.

286.   Plaintiff Perez and the New York Class members reasonably relied on LG's misrepresentations and omissions of material facts in its advertisements of the LG Refrigerators and in the purchase of the LG Refrigerators.

287.   Had Plaintiff Perez and the New York Class members known that the LG Refrigerators would exhibit the Compressor Defect, they would not have purchased the LG Refrigerators. Any reasonable consumer would have considered the Compressor Defect to be materially important in deciding whether to purchase an LG Refrigerator. Plaintiffs did not receive the benefit of their bargain as a result of LG's misconduct.

288.   Plaintiff Perez and the New York Class members were harmed and suffered ascertainable loss and actual damages as a result of LG's misrepresentations and omissions with regard to their LG Refrigerators' compressors in that they purchased refrigerators which do not perform as advertised; they overpaid for their LG Refrigerators; they lost spoiled food and beverages; and they incurred costs for repairs, rental refrigerators, and/or new refrigerators.

289.   A causal relationship exists between LG's unlawful conduct and the ascertainable losses suffered by Plaintiff Perez and the New York Class members. Had Plaintiff Perez and the New York Class known that the LG Refrigerators would exhibit the Compressor Defect, they would not have purchased the LG Refrigerators.

290.   As a direct result of LG's violations of the NYDAPA, Plaintiff Perez and the New York Class have been injured and have suffered actual damages and monetary losses.

291.   Plaintiff Perez and the New York Class members are entitled to actual damages, statutory damages, treble damages, equitable relief, injunctive relief, attorneys' fees, costs, and other appropriate relief under the NYDAPA, in an amount to be proven at trial.

**COUNT XI**
**Violation of the New York False Advertising Act**
**N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Eva Perez and the New York Class)**

292.    Plaintiff Eva Perez incorporates by reference and re-alleges each preceding and succeeding paragraph as though fully set forth herein.

293.    Plaintiff Perez brings this cause of action individually and on behalf of the New York Class.

294.    LG's conduct as alleged herein occurred in "the conduct of business, trade or commerce" within the meaning of the New York False Advertising Act ("NYFAA"), N.Y. Gen. Bus. Law § 350.

295.    The NYFAA prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material." N.Y. Gen. Bus. Law § 350-a.

296.    LG caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known by LG, or that through the exercise of reasonable care should have been known by LG, to be untrue and misleading to Plaintiff Perez and the New York Class.

297.    LG made numerous material misrepresentations and omissions of fact with intent to mislead and deceive concerning the LG Refrigerators, particularly concerning the reliability, durability, energy-efficiency, long-term performance, high quality and advanced technological nature of the LG Refrigerators. Moreover, LG's misrepresentations and omissions concealed that the LG Refrigerators would not fulfill their ordinary and intended purposes of keeping food and beverages cool and frozen over the lifespan of an average, lower-priced refrigerator. As such, LG

70

systematically misrepresented, concealed, suppressed, or omitted material facts relating to the LG Refrigerators and Compressor Defect in the course of its business, with the intent that consumers would rely upon such misrepresentation, concealment, suppression, or omission.

298.    LG's false advertising was likely to and did in fact deceive reasonable consumers, including Plaintiff Perez and the New York Class members, about the defective and true characteristics of LG Refrigerators and Compressor Defect, the quality of the LG brand and the true value of the LG Refrigerators.

299.    The LG Refrigerators do not perform as advertised, making them far less valuable than advertised.

300.    Plaintiff Perez and the New York Class members reasonably relied on LG's misrepresentations and omissions of material facts in its advertisements of the LG Refrigerators and in the purchase of the LG Refrigerators.

301.    Plaintiff Perez and the New York Class members would not have purchased the LG Refrigerators but for LG's false advertising, because knowing that LG Refrigerators would exhibit the Compressor Defect would have prevented Plaintiffs from purchasing the refrigerators.  Any reasonable consumer would have considered the Compressor Defect to be materially important in deciding whether to purchase an LG Refrigerator. Plaintiffs did not receive the benefit of their bargain as a result of LG's misconduct.

302.    Plaintiff Perez and the New York Class members were harmed and suffered injury in fact and/or ascertainable loss and actual damages as a result of LG's false advertising with regard to their LG Refrigerators' compressors in that they purchased refrigerators which do not perform as advertised; they overpaid for their LG Refrigerators; they lost spoiled food and beverages; and they incurred costs for repairs, rental refrigerators, and/or new refrigerators.

303.    Plaintiff Perez and the New York Class members are entitled to actual damages and/or equitable relief, injunctive relief, attorneys' fees, costs, and other appropriate relief under the NYFAA, in an amount to be proven at trial.

304.    Plaintiff Perez and the New York Class members also seek treble damages up to $10,000, pursuant to N.Y. Gen. Bus. Law § 350-e, because LG's unlawful conduct was committed willfully and knowingly.

## COUNT XII
## Common Law Fraud
### (On Behalf of Plaintiffs and the Class)

305.    Plaintiffs incorporate by reference and re-allege each preceding and succeeding paragraph as though fully set forth herein.

306.    Plaintiffs bring this cause of action individually and on behalf of the Class.

307.    LG intentionally concealed material facts about the nature, performance, and quality of the LG Refrigerators. LG knew about the defective nature of the compressors and related parts in the LG Refrigerators and about numerous consumer complaints concerning defect-related problems, but LG never disclosed the Compressor Defect to Plaintiffs and Class members.

308.    The Compressor Defect is latent and unobservable until it manifests in a refrigerator failure. Plaintiffs and Class members had no reasonable means of knowing that LG's representations concerning the LG Refrigerators and their compressors, were incomplete, were false, were misleading, and omitted information about the existence of the latent defect. None of the Plaintiffs and Class members discovered or reasonably could have discovered LG's deceit before they purchased their LG Refrigerators or before the time to return the refrigerators expired.

309.    LG had a duty to disclose the Compressor Defect because the defect is material and LG possessed exclusive knowledge of it. LG acquired its knowledge of the Compressor Defect

from numerous consumer complaints and warranty claims, the *Clark* litigation, and LG's non-public internal data, analyses, and communications, among other sources.

310.    LG also had a duty to disclose the Compressor Defect because LG made partial representations regarding the purported high quality of the LG Refrigerator and its linear compressor, yet failed to disclose facts that would have materially qualified these partial representations. LG made these partial and misleading representations through marketing materials, advertising, product brochures and labeling, statements made through its agents and on its website, and in other sources that Plaintiffs and Class members encountered before purchasing their LG Refrigerators. In light of LG's voluntarily providing such partial information to Plaintiffs and Class members, LG had a duty to disclose the entire truth about the compressor and, in particular, its defective nature.

311.    Before and immediately after purchase and within the time period in which they could have returned their LG Refrigerator without penalty, each Plaintiff saw or heard LG's specific representations about the LG Refrigerators on websites, in product marketing materials, advertisements, at the retail outlets where the LG Refrigerators were sold, and in product manuals and brochures that accompanied the LG Refrigerators.

312.    These informational sources that Plaintiffs saw or heard, including statements on websites or in retail stores, product manuals, brochures, or promotional materials, did not disclose that the LG Refrigerator had a defective compressor.

313.    LG concealed the defect to sell more LG Refrigerators at higher prices, to protect its brand, and to avoid the costs of honoring warranty claims and making effective repairs, replacements, and refunds for its customers.

314.     Had LG disclosed its knowledge of the Compressor Defect before Plaintiffs and Class members purchased their LG Refrigerators, they would have seen such disclosures and been aware of them. LG's omissions were material to Plaintiffs and Class members, as they would not have purchased the LG Refrigerator or would not have paid the premium price that they paid for the LG Refrigerator, had they known it contained the Compressor Defect.

315.     At the time that LG made these misrepresentations and concealed these material facts, and at the time that Plaintiffs and Class members purchased the LG Refrigerators, Plaintiffs and the Class were unaware of the defect.

316.     Plaintiffs and Class members did in fact rely upon LG's misrepresentations concerning the non-defective nature of the compressors in the LG Refrigerators, and such reliance was reasonable.

317.     As a direct and proximate cause of LG's deceptive and fraudulent conduct, Plaintiffs and Class members sustained damages.

318.     LG's fraudulent conduct in suppressing and concealing material facts was malicious, oppressive, deliberate, intended to defraud Plaintiffs and Class members and enrich LG, and in reckless disregard of Plaintiffs' and Class members' rights, interests, and well-being. Plaintiffs and Class members seek an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined at trial.

## COUNT XIII
## Unjust Enrichment
### (On Behalf of Plaintiffs and the Class)

319.     Plaintiffs incorporate by reference and re-allege each preceding and succeeding paragraph as though fully set forth herein.

320.     Plaintiffs bring this cause of action individually and on behalf of the Class.

321.    As a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects, Defendant has profited through the sale of the LG Refrigerators. Although the LG Refrigerators are purchased through Defendant's agents, the money from the refrigerator sales flows directly back to Defendant.

322.    Additionally, as a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects in the LG Refrigerators, Plaintiffs and Class members have refrigerators that require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

323.    Defendant has therefore been unjustly enriched due to the known defects in the LG Refrigerators through the use of funds that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiffs and Class members.

324.    As a result of the Defendant's unjust enrichment, Plaintiffs and Class members have suffered damages in an amount to be proven at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, requests the Court to enter judgment against LG, as follows:

A.  An order certifying the Nationwide Class, the California Class, the Minnesota Class, the New Mexico Class, and the New York Class, designating Plaintiffs as the Class Representatives, and their counsel as Class Counsel;

B.  A declaration that Defendant is financially responsible for notifying all Class members about the defective nature of the LG Refrigerators and the compressors;

C.  An order enjoining Defendant from further deceptive distribution and sales practices with respect to the LG Refrigerators, and to remove and replace Plaintiffs and Class

members' compressors with a suitable alternative product; enjoining Defendant from selling the LG Refrigerators with the misleading information; compelling Defendant to provide Class members with a replacement Compressor that does not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injuries alleged and to notify all Class members that such warranty has been reformed;

D.  A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

E.  An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

F.  Any and all remedies provided pursuant to the state and federal consumer protection statutes herein alleged;

G.  A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it has received from the sale of the LG Refrigerators, or make full restitution to Plaintiffs and Class members;

H.  An award of attorneys' fees and costs, as allowed by law;

I.  An award of pre-judgment and post-judgment interest, as provided by law;

J.  Leave to amend the Complaint to conform to the evidence produced during discovery and at trial;

K.  Plaintiffs demand that LG perform a recall, and repair all refrigerators; and

L.  Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of any and all issues in this action so triable.

Dated: July 25, 2019                    Respectfully submitted,


/s/ Amey J. Park

Shanon J. Carson (*pro hac vice admission forthcoming*)
Lawrence Deutsch, Bar No. 034971986
Jacob M. Polakoff, Bar No. 035832006
Amey J. Park, Bar No. 070422014
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.:    (215) 875-3000
Fax:    (215) 875-4604
Email:  scarson@bm.net
           ldeutsch@bm.net
           jpolakoff@bm.net
           apark@bm.net

E. Michelle Drake (*pro hac vice admission forthcoming*)
**BERGER MONTAGUE PC**
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.:    (612) 594-5999
Fax:    (612) 584-4470
Email:  emdrake@bm.net

*Counsel for Plaintiffs and the Class*